Marcus L. Filley, J.
This is a proceeding under article 3 of the Family Court Act, wherein the petitioner — father of the said children — alleges that the said children are neglected due to the immoral and improper conduct of their mother, respondent.
*412 Section 312 of said act defines a neglected child as “ a male less than sixteen years of age or a female less than eighteen years of age * * * (b) who suffers or is likely to suffer serious harm from the improper guardianship, including lack of moral supervision or guidance, of his parents or other person legally responsible for his care and requires the aid of the court ’
In the classical sense, neglect usually implied the failure to supply a child with the material things of life, such as food, clothing and medical care. The Legislature has wisely amplified the meaning of neglect to include among other things, moral neglect. As Justice Panken in Matter of O’Donnell (61 N. Y. S. 2d 822, 824) has said: “ Neglect of children does not mean a failure to provide children with the necessaries of life. It means infinitely more than that. A failure to provide children with the spiritual guidance, with the inculcation of a moral sense, or conduct such by parents as would cause children because of a rejection, to engage in delinquent conduct, is neglect.” In the case of Matter of Roe (196 Misc. 830, 831) the same learned Justice said: “ That which goes to the spiritual and moral life of children is equally important, and the children are entitled to it.”
Statutes often define in general terms. Decisional law particularizes and refers to a given set of facts. The statutory definition of neglect, therefore, being in general terms, has resulted in a dearth of cases reported; and the tendency has been to leave it to the Judge in a particular case to make his own decision as to whether or not there is neglect, based upon the particular and unique set of facts in the case at bar. It therefore has devolved upon the courts to establish the moral standards to be followed by persons to whom is entrusted the care and custody of children. And never has there been a greater need for the courts to maintain a high level of moral conduct than exists today. This court intends to give more than lip service to the principle that the fabric of our society is composed of the family unit and when the family unit is damaged, the fabric of society suffers. Our courts will continue to insist upon a high level of moral conduct on the part of custodians of children, and will never succumb to the “ Hollywood ” type of morality so popular today, which seems to condone and encourage the dropping of our moral guard. We have not yet reached the point where, when parents who have tired of each other’s company, may be free to seek other companionship with complete disregard of the moral examples they are setting for their children. This is the crux of the case at bar.
*413 The record is replete with credible testimony to the effect that the respondent mother, living in an apartment house with her five small children separated from the petitioner father, frequently entertained male companions in the apartment and in the presence of the children. In fact, on occasion, these male companions not only spent considerable parts of the day there but ate meals with her and the children and, on at least one occasion, one of them spent the night with the respondent and, in fact, slept with her, to the knowledge of the children. On another occasion, she took the children to an airport to meet a boy friend and brought him back to the apartment, where he spent parts of several days. This conduct would be culpable under any circumstances, but was particularly culpable because only a year ago, this court in another similar proceeding for neglect between the same parties, found her to have neglected the children and temporarily deprived her of custody, and only returned them to her upon the condition that, when the children were in her custody “ They are not to be subjected to the influence of any boy friend or male companion of the mother.” Therefore, the respondent in this proceeding cannot be heard to complain that, “ she didn’t think she was doing anything wrong. ’ ’
This is not a case similar to cases like People ex rel. Geismar v. Geismar (184 Misc. 897) in which custody of children has been awarded to the mother in divorce cases in spite of the fact that she had committed an act of adultery, in which cases the courts have held that adultery alone is not a bar to custody. The case at bar involves a situation in which there is more than ample evidence that it was practically a regular course of conduct on the part of the respondent. Witnesses, when asked if they had intercourse with the respondent, took umbrage in the constitutional provision against self incrimination. This is a civil proceeding and the usual inferences can be drawn from such refusal to testify. (Bradley v. O’Hare, 2 A D 2d 436.)
Judge Desmond, writing for the Court of Appeals in Bunim v. Bunim (298 N. Y. 391) has stated the position of our courts clearly and accurately: “No decision by any court can restore this broken home or give these children what they need and have a right to — the care and protection of two dutiful parents. No court welcomes such problems, or feels at ease in deciding them. But a decision there must be, and it cannot be one repugnant to all normal concepts of sex, family and marriage. The State of New York has old, strong policies on those subjects, strongly stated by the Legislature (see, for instance, Penal Law, § 100; Civ. Prac. Act, §§ 1147, 1161, 1170; Domestic Relations *414 Law, § 8). Our whole society is based on the absolutely fundamental proposition that: ‘ Marriage, as creating the most important relation in life, ’ has ‘ more to do with the morals and civilization of a people than any other institution ’ (Maynard v. Hill, 125 U. S. 190, 205). * * * It cannot be that the best interests and welfare ’ of those impressionable teen-age girls will be ‘ best served ’ by awarding their custody to one who proclaims, and lives by, such extraordinary ideas of right conduct. ’ ’
It is, therefore, the decision of this court that the petitioner has, by a fair preponderance of the evidence, proved the allegations of the petition and that the said children are neglected. It is the court’s most fervent hope that the petitioner and respondent would resume living together if for no other reason than to give these children a stable home with a mother and father to guide them. As has been so often stated, the sole interest of the court in this proceeding is the welfare and best interest of the children.
All motions made by respondent’s attorney and reserved on by the court, are denied. The matter is adjourned to give the court an opportunity to investigate a proper disposition of the children. Their present custody with the father is continued upon the same terms and conditions as heretofore set forth, and an order of neglect is herewith entered.