Raymond E. Aldrich, Jr., J.
Involved herein are four proceedings under article 3 of the Family Court Act alleging respondents to have neglected their childreD, and four companion proceedings charging respondents with violations of part 1 of article 65 of the Education Law, both statutes of the State of New York. All eight proceedings were heard and tried together, on consent of the parties acting with counsel, due to similarity of issues, so as to avoid an unnecessary duplication of proof.
Petitioner is the Attendance Supervisor of the city school district of the City of Poughkeepsie, New York. He alleges that the four children of the respondents, Emilie Jane, George, Virginia, and Charles Elwell, ages approximately 153/9, 1SV¿, 12 and 9, all of compulsory school age under the law of New York, are neglected children in that their parents, though financially able, do not adequately supply them with education or medical care, so as to enable them to attend school, as they have failed and refused to have the children immunized against poliomyelitis as required by section 2164 of the Public Health Law of New York, or to show that said section does not apply to the children in accordance with the exemption contained in subdivision 8 thereof; and he further alleges that the said children are not permitted to attend school because each is a minor *254 whose physical condition endangers the health and safety of himself and other minors, which condition may be remedied by taking reasonable measures, which the parents have refused to take such as having the children immunized against poliomyelitis.
In the four companion proceedings, in similar language, petitioner charges the same failure and refusal to have the children immunized is a violation of part 1 of article 65 of the Education Law of New York, subjecting the parents to the penalties of section 3233 thereof.
In response and answer to the proceedings alleging neglect and violation of the Education Law, respondents averred compliance with section 2164 of the Public Health Law, specifically subdivision 8 thereof, alleging that they are bona fide members of a recognized religious organization whose teachings are contrary to the practice therein required; further alleging, among other defenses, that section 2164 of the Public Health Law was illegal, unlawful and unconstitutional, being in derogation of section 3 of article I and in contravention of section 11 of article I of the New York State Constitution, and the First Amendment and section 1 of the Fourteenth Amendment to the Constitution of the United States.
At the outset the court appointed a Law Guardian to represent the interests and welfare of the children, under section 343 of the Family Court Act. Plenary hearings were held, at which both petitioner and respondents were ably represented by attorneys, both testified, witnesses were called, and much documentary evidence received.
The court finds from the record that the four children are residents of the City of Poughkeepsie and of compulsory school age; that written notice of the necessity of compliance with section 2164 of the Public Health Law was given to the respondents in December, 1966, as well as in the Summer of 1967; that the respondent father communicated in writing with the school authorities, stating he was a bona fide member of a recognized religion and of the protestant faith, whose teachings prohibit violation of his conscience and moral belief, and that the doctrine and beliefs of the protestant faith, of which he was a member, do not permit medical immunization, and further that he was conscientiously and morally opposed to having his children immunized against poliomyelitis; that the children have not been immunized as they are subscribing to the instruction of their parents; and further that the school authorities determined the written communications of the respondent father did not satisfy the requirements of subdivision 8 of section 2164 of the Public Health Law, so as to bring the children within the religious *255 exemption relieving them of immunization, whereupon the children were suspended.
The pertinent subdivisions of section 2164 of the Public Health Law, effective January 1, 1967, provide: “ 6. No principal, teacher, owner or person in charge of a school shall permit any child to attend such school without the certificate provided for in subdivision five of this section or some other acceptable evidence of the child’s immunization against poliomyelitis. * * * “ 8. This section shall not apply to children whose parent, parents, or guardian are bona fide members of a recognized religious organization whose teachings are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.”
In enacting the above section, the Legislature found and declared the following intent:
“ 1. One of the truly great medical advances of this generation has been the development of proved methods of reducing the incidence of poliomyelitis, the once great crippler. Public health statistics show clearly that immunization is at least ninety per cent effective in preventing paralysis. Immunization has been proven absolutely safe and there is no evidence or indication that any one has contracted paralytic polio from an immunization dose.
‘ ‘ 2. Out of apathy or ignorance, tens of millions of Americans are still not immunized against paralytic polio. Many millions of the unimmunized are pre-school children under the age of five years and nearly one-half of all paralytic cases in recent years have occurred in this group. Studies indicate that the majority of these unprotected persons are in the lower socioeconomic group who reside in congested urban areas and who are generally apathetic towards immunization.”
■ The first question to be resolved is whether section 2164 of the Public Health Law is violative of the State and Federal Constitutions upon which all our legislative edicts are founded.
These proceedings involving immunization against poliomyelitis are matters of first impression heretofore not decided by any tribunal of our State, or any other State, as far as the court has ascertained.
The medical practice of immunization and vaccination against diphtheria and smallpox has been recognized for many years, and the power of the State, through its legislative body, to make such immunization and vaccinations mandatory for pupils, without exemptions based on religious beliefs or convictions, is valid by constitutional standards as a reasonable exercise of the police *256 power. (Jacobson v. Massachusetts, 197 U. S. 11; Zucht v. King, 260 U. S. 174; Sadlock v. Board of Educ. of Carlstadt, 137 N. J. L. 85; Mountain Lakes Board of Educ. v. Maas, 56 N. J. Super. 245, affd. 31 N. J. 537, cert. den. 363 U. S. 843; Matter of Viemeister, 179 N. Y. 235; People v. Ekerold, 211 N. Y. 386; Matter of Whitmore, 47 N. Y. S. 2d 143; Pierce v. Board of Educ. of City of N. Y., 30 Misc 2d 1039.)
Furthermore, it has been held the State can make vaccination for smallpox a condition of school admittance to a university, with the student accorded an exemption from such requirement if vaccination interferes with the free exercise of his religious principles. (Kolbeck v. Kramer, 84 N. J. super. 569, mod. 46 N. J. 46.)
The rationale postulated first in Jacobson v. Massachusetts (supra) and reaffirmed in Zucht v. King (supra) influences this court and is dispositive in resolving the constitutional questions whether section 2164 of the Public Health Law restrains respondents’ free exercise of their religion, deprives them of due process, or equal protection of the laws.
In the Jacobson case (supra, p. 26) the Supreme Court declared: “ there are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy.”
This court believes it is a valid exercise of the police power of the State to enact a compulsory immunization law against poliomyelitis to which a child must conform for admittance to school, as I am impelled to believe the Legislature, and not the courts, has the power and responsibility to decree whether immunization against poliomyelitis is prudent and the most desirable method of over-all prevention of this dreaded disease in the protection of the public health. The fact that people may differ as to the efficacy and necessity of such immunization, or whether the practice is medically wise or unwise, is not conclusive. Our Court of Appeals has stated in Matter of Viemeister (179 N. Y. 235, 241, supra) in relation to vaccination: “ The fact that the belief is not universal is not controlling, for there is scarcely any belief which is accepted by every one. ’ ’ While immunization against poliomyelitis may or may not be a preventative of the disease, the fact is that the common belief of the people of our State, expressed presumably through the edict of our legislative representatives, is that it is.
This court does not subscribe to the proposition that before the State can require immunization against poliomyelitis, the *257 disease must be then existing in the community, or that a raging epidemic must prevail, or even the imminence of one. In the protection of the health of the public, we have a right to expect and require that appropriate legislative procedures against the disease are taken well in advance of such a catastrophe.
Section 2164 of the Public Health Law applies to pupils in all schools in New York State, public or private, and all students are thus similarly treated alike. The fact that those who are members of a bona fide religious organization with teachings contrary are exempted does not render the statute violative of the equal protection of the laws guaranteed by the State and Federal Constitutions, least of all deprive one of the free exercise of his religious beliefs. Nor is the wording of the statute, and therefore its operation, restricted to pre-school children. To do so would be to militate against the intent of the Legislature to eradicate this crippling disease from all socioeconomic levels of our society through immunization of all children, above and below pre-school age, who are the most susceptible victims of the affliction.
It has been suggested by counsel that section 2164 of the Public Health Law denies the exercise of freedom of religion for the reason that certain members of a religious organization whose teachings and beliefs are contrary to the practice of immunization would be exempted, and thereby preferred, given an advantage and preferential treatment, while others would not. Even if such a reason were assumed true, it does not follow that freedom of religion would be constitutionally prohibited or restrained by this statute. As guaranteed by the State and Federal Constitutions, freedom of religion means freedom to individually believe and to practice or exercise one’s belief. But the practice of one’s religion must be exercised in the light of the general public welfare, and cannot conflict with the public welfare. Acts which are not worship are not necessarily guaranteed ; for instance, a person cannot, under the guise of religious belief, practice polygamy and be protected from our statute defining the crime of bigamy. (People v. Pierson, 176 N. Y. 201.)
A well recognized principle of constitutional construction is that a statute which is vague, uncertain and ambiguous, violates the due process provisions of our State and Federal Constitutions. In Lanzetta v. New Jersey (306 U. S. 451, 453) the constitutional standard was clearly and plainly prescribed when the court stated ‘ ‘ all are entitled to be informed as to what the State commands or forbids. * * * ‘A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its mean *258 ing and differ as to its application, violates the first essential of due process of law.’ ” To suggest that men of common intelligence cannot understand said section 2164 without guessing, is an insult to them. "What must be done and what must be avoided to escape the impact of the section are obvious — have administered “an adequate dose or doses of an immunizing agent against poliomyelitis which meets the standards approved by the United States public health service for such biological products, and which is approved by the State Department of Health” (§ 2164, subd. 2) or prove to be within the exemption granted by subdivision 8 thereof.
Respondents further advance the argument that the description “ religious organization ” as used in the statute is a term indefinable with any degree of reasonable clarity, and in support they stress we have no example of such an organization worthy of exemption mentioned in the statute and none has been given at the hearings by the petitioner. This court does not subscribe to this thesis. The fact that the Legislature did not believe it wise or necessary to itemize such religious organizations who could qualify, or none were proven at the hearings, is not significant, and I do not believe the Legislature is required to particularize such organizations in order to satisfy constitutional requirements of clarity and definiteness, since the description ‘‘ religious organization ’ ’ is definable, within the common meaning of men.
For the foregoing reasons, this court holds that section 2164 of the Public Health Law is a reasonable and proper exercise of the police power of the State, for the protection of the public ■health, within the ambit of constitutionally permissible legislative authority.
An analysis of the evidence now is indicated to determine whether the respondents’ children come within the exemptions of subdivision 8 thereof.
Respondents called an ordained clergyman of the Roman Catholic Church who stated that immunization against poliomyelitis is not contrary to the tenets of his church; a pastor of the Baptist Church who asserted none of the church’s doctrinal statements or canonical law prohibited immunization against poliomyelitis, and a minister of the Methodist Church who testified that in neither paragraph 1820 of the official discipline nor any other rule of the church is immunization against poliomyelitis contrary to their teachings.
The record indicates that the respondents and their children are attending members of the Methodist Church whose minister testified, that the father is a chiropractor, and he contends his *259 religion is Ms conscience wMch tells Mm that immunization against poliomyelitis is wrong and harmful, thereby contrary to Ms conscience and personal convictions which he is entitled to entertain. Significantly, the mother of the children indicated that if she was assured there was no danger to immunization, she would not object.
The record does not demonstrate that the respondents’ objections to immunization against poliomyelitis are based upon the tenets of a religious organization whose teacMngs are contrary thereto, in fact this court believes that respondents are bona fide members of the Methodist Church, a recognized religious organization, whose teachings are not contrary to such immunization. Respondents’ objections do not appear to be more than their personal opinions, fears unsupported by any competent medical proof, and a purported exercise of their own consciences which would not interfere with their free exercise of the tenets of the Methodist Church. Accordingly, while the respondents are bona fide members of a recognized religious organization, they are not of one whose teachings are contrary to the practice of immumzation against poliomyelitis. The proof does not qualify them for the exemption provided in subdivision 8 of section 2164 of the Public Health Law.
From the foregoing determinations, this court finds that the allegations of the four petitions alleging neglect of these four cMldren in their not being adequately supplied with education due to the refusal of the respondents, though offered financial means to do so, to cause them to be immunized against poliomyelitis, and thus able to attend school, have been established by the fair preponderance of the evidence, and therefore each of the children is adjudged to be a neglected child within the meaning of article 3 of the Family Court Act.
Attention is now directed to the four proceedings charging respondents with a violation of part 1 of article 65 of the Education Law. The Law Guardian raises the defense that this court lacks jurisdiction over these proceedings.
The Family Court is a State-wide court of record under the unified court system for the State, created by the constitutional amendment adopted by the people on November 7,1961, effective September 1, 1962 (N. Y. Const., art. VI, § 1, subds. a, b; § 13, subd. a). The jurisdiction granted to Family Court (N. Y. Const., art. VI, § 13, subd. b) was limited to seven specifically enumerated ‘ ‘ classes of actions and proceedings which shall be originated in such family court in the manner provided by law ”, and (N. Y. Const., art. VI, § 13, subd. c) “ the following matters when referred to the family court from the supreme court ’ ’, *260 which consisted of proceedings for custody of minors and applications in matrimonial actions to fix support and custody or enforce or modify judgments and orders pertaining thereto. Nowhere in article VI (§ 13, subds. b and c) of the New York State Constitution is there any language from which it can be even remotely inferred that the court was granted power to hear and determine proceedings involving a violation of part 1 of article 65 of the Education Law. This is understandable, since the penalties afforded by section 3233 of the Education Law are penal in nature, with imprisonment prescribed for the first offense, and thus are foreign to the spirit of Family Court which is a court civil in nature. Had the Legislature intended that Family Court would have such power over such proceedings, the language of subdivisions b and c should have expressly se provided. This court must conclude that the Legislature intended to exclude proceedings involving such violations from the jurisdiction of Family Court.
Nor can jurisdiction over the proceedings charging such violations of the Education Law be derived from subdivision 1 of section 3232 of the Education Law, granting “ courts of special sessions and magistrates ’ courts * * * concurrent jurisdiction with Family Courts to hear, try and determine charges of violation of the provisions of part one of this article, within their respective jurisdiction ’ ’, since that legislative enactment has no constitutional basis for being included within the limited jurisdiction granted the Family Court (N. Y. Const., art. VI, § 13, subds. b, c).
This court is well aware that the provisions of subdivision c of section 7 of article VI of the New York State Constitution provide: “ If the legislature shall create new classes of actions and proceedings, the supreme court shall have jurisdiction over such classes of actions and proceedings, but the legislature may provide that another court or other courts shall also have jurisdiction and that actions and proceedings of such classes may be originated in such other court or courts.”
While it may not be denied that violations of part 1 of article 65 of the Education Law are an example of “ such classes of actions and proceedings ”, the limited jurisdiction conferred by subdivisions b and c of section 13 of article VI of the New York State Constitution, does not give the Family Court authority to hear and determine the same. If it were otherwise the constitutional grant, of jurisdiction to the County Court (N. Y. Const., art. VI, § 11, subd. a) and the Criminal Courts in New York City (N. Y. Const., art. VI, § 15, subd. c), courts having criminal jurisdiction, wherein both by identical language were granted juris *261 diction over “ such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law ’ ’, would have been given in the same language to Family Court. I am inclined to believe the reason the Family Court was not given jurisdiction over violations of part 1 of article 65 of the Education Law is because of the authority given to the Family Court in article 3 of the Family Court Act concerning children whose parents do not adequately supply them with education. (See Matter of Wilson v. Family Ct. of State of N. Y., 46 Misc. 2d 478.)
Accordingly, the four proceedings charging a violation of part 1 of article 65 of the Education Law are dismissed for lack of jurisdiction.
The neglect proceedings will be forthwith restored to the calendar to determine what order of disposition should be made.