M. Michael Potoker, J.
Petitioner’s charge of child neglect under article 10 of the Family ¡Court Act is predicated on his wife’s living in the same household with their five minor children and a paramour.
The facts are conceded. On September 13, 1970 respondent left the marital home with her five minor children, whose ages range from 5 to 13, and took up residence with her paramour in his one-family home. The children occupy two rooms on the upper floors while respondent and her paramour, with whom she has been intimate, share a bedroom on a lower floor. Respondent stated that she has instituted an action for divorce and, upon its being granted, intends to intermarry with her paramour.
Respondent further testified that her paramour is supporting the household and that he is very good to the children, so much so, that they are doing much better in school and no longer truant.
Not at issue in this proceeding is the fact that respondent may very well have been justified in removing herself and *188 their children from petitioner’s home because of alleged misconduct on part of petitioner.
The question facing the court is whether respondent’s conduct absent proof of present and discernible harm suffered by the children constitutes neglect under article 10 of the Family Court Act.
Article 10 — Child Protective Proceedings, formerly article 3, is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being (Family Ct. Act, §1011).
No more objective or workable concept of neglect has been set by the courts than that contained in People ex rel. Wallace v. Labrenz (411 Ill. 618, 624): “Neglect, however, is the failure to exercise the care that the circumstances justly demand. It embraces wilful as well as unintentional disregard of duty. It is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes. ’ ’
In the Matter of Anonymous (37 Misc 2d 411) a neglect proceeding was initiated by the father of three children who alleged that the children were neglected due to the immoral and improper conduct of their mother in that said mother entertained male companions in her home and in the presence of her children. In sustaining the allegations made by petitioner the court held as follows (p. 412): “ Our courts will continue to insist upon a high level of moral conduct on the part of custodians of children, and will never succumb to the “ Hollywood ” type of morality so popular today, which .seems to condone and encourage the dropping of our moral guard. We have not yet reached the point where, when parents who have tired of each other’s company, may be free to seek other companionship with complete disregard of the moral examples they are setting for their children. This is the crux of the case at bar.”
The court is mindful of diverse decisions rendered in custody proceedings in this State (People ex rel. Geismar v. Geismar, 184 Misc. 897) and elsewhere (Goldson v. Goldson, 192 Ore. 611; Bargeon v. Bargeon, 153 So. 2d 10 [Fla. App., 1963]) and other cases cited in Bergman: Custody Awards, Family Law Quarterly, vol. 2, No. 4, Dec. 1968 published by the Section of Family Law, American Bar Association) in which the courts have held that adultery alone is not a bar to custody and decisions to the contrary (Bunim v. Bunim, 298 N. Y. 391; Maynard v. Hill, 125 U. S. 190).
*189 Isolated instances of infidelity can "be overlooked (Kruczek v. Kruczek, 29 N. Y. S. 2d 385), but for a married woman to live with a man with five minor children of her undissolved marriage transcends the area of an isolated occurrence.
In Johnson v. Johnson (47 Misc 2d 805, 808-809, affd. 25 A D 2d 672), a divorce action involving a mother’s adultery, the court said: “Such an example is a potent force in the formulation of a child’s own standards of proper conduct.”
Neglect statutes are concerned with parental behavior only and solely as it adversely affects the child presently or in future. Spouses willing to betray each other need have no fear for the court’s intervention providing however such actions do not in any manner whatsoever impair or tend to impair the physical, mental or emotional condition of a child.
In a neglect proceeding, the court’s duty is to determine whether, despite any past deficiency, children are at time of hearing .suffering or likely to -suffer from neglect (Matter of Vulon, 56 Misc 2d 19) unlike custody cases where the welfare and best interests of a child dictate its immediate removal from the custody of the guilty parent.
The gods visit the sins of the fathers upon the children (Phrixus, Fragment 970). Here the sins of the mother are being visited upon the children and as parens patriae (Finlay v. Finlay, 240 N. Y. 429) we are -duty bound to intervene.
"Who can deny that the children herein, more particularly -the -older ones who have reached the impressionable ages of 13 and 12, do not now or might not in the immediate future suffer detrimental damage attributable to the adulterous act of their mother. I submit that neglect as defined by the act includes not only present harm being inflicted upon a child by the conduct of a parent but anticipates any harm that might be suffered by a child in the future as a result thereof (Family C.t. Act, §1012).
A finding of neglect is justified when there is a direct relationship between the mother’s adultery and her children’s welfare so that her immoral behavior would be directly detrimental .to their best interest if the condition persists unabated.
I find that petitioner has sustained the allegations of his petition by a fair preponderance of credible evidence. Accordingly the children named herein are adjudicated neglected children pursuant to article 10 of the Family Court Act.
The matter is referred to the Probation Department for investigation and report returnable on February 10, 1971.