Ralph E. Cory, J.
In order to properly understand the nature and background of the five matters before this court for deter *954 mination, a complete summary of the original petitions and pleadings as well as the amended petitions and motions must be set forth in chronological order.
The present petition before the court was originally one of three neglect petitions brought by the Richmond County Society for the Prevention of Cruelty to Children on behalf of three named children at the Willowhrook State School, Staten Island, New York. Named as respondents were the Department of Mental Hygiene of New York State and the State of New York.
After a hearing on the original petition, held on March 17, 1972, the petitioner withdrew two of the petitions involving the alleged neglect of Arlene D. and Veronica M., because the State Department of Mental Hygiene was able to show through testimony of the director of the school that the allegations complained of had been corrected and they would not occur again.
The withdrawal of these two petitions was on consent of the petitioner and respondent. It is also carefully to be noted that the Attorney-General representing the New York State Department of Mental Hygiene, the respondent, both at the outset of the hearings and the conclusion resulting in the afore-mentioned withdrawal of two cases, did not waive objections to the jurisdiction of this court and that the Attorney-General’s consent was without any prejudice on the part of the respondent Department of Mental Hygiene to any jurisdictional objections to this court which they had.
There then remained for determination only the petition of Louis H., wherein it was alleged that 1 ‘ the respondent, the Department of Mental Hygiene, did fail to provide proper medical attention for the above child when the child was returned there from a home visit with a temperature of 104 degrees in December, 1971 ” and thus was a neglected child under section 1012 of the Family Court Act.
Prior to the return date set for the hearing on this one remaining petition, the petitioner made a motion returnable June 6, 1972, to amend this petition to a class action by the Richmond County Society for the Prevention-of Cruelty to Children individually and on behalf of all of the male patients less than 16 years of age and on behalf of all the female patients less than 18 years of age and on behalf of the parents of said children. According to the testimony of the Director of Willowhrook State School, there are 2,136 children less than 16 years of age, 983 between 16 and 21 years of age, and 2,149 adults. The Attorney-General agreed to this class action without waiving any of its general objection to the jurisdiction of this court.
*955 The petitioner in the amended petition added the Board of Visitors of the Willowbrook State School as a respondent in addition to the original respondents, the State of New York and the Department of Mental Hygiene. The supporting affidavits state that representatives of the petitioner during the week of January 10, 1972 visited the Willowbrook State School and inspected the Willowbrook State School housing children, both male and female, and found overcrowding, understaffing, lack of adequate clothing and shoes, unsanitary conditions in the lavatories, inadequate feeding facilities, insect infestation, lack of sufficient chairs and benches, inoperable toilet bowls, showers and sinks, no toilet paper or paper towels, inoperable drinking fountains, paint chipping off walls and ceilings, failure to provide medical attention after receiving reports of accidents, failure to record reported accidents, high incidence of hepatitis, parasitic maladies, and human excrement on the floors and other surfaces of patient wards.
As a result of these findings, the Richmond County Society for the Prevention of Cruelty to Children met in executive sessions with its board of directors and authorized public hearings to be held to investigate the above conditions and to invite interested persons to appear and testify under oath as to the conditions of the Willowbrook State School. Said hearings were held between January 31, 1972 and February 4, 1972.
The petitioner alleges that there are sufficient facts and evidence from the personal observations of their representatives and from the sworn testimony at said hearings to warrant a finding of neglect by the respondents as to the children housed at Willowbrook State School.
Petitioner therefore is asking that this court accept jurisdiction of the within petition directing an appropriate investigation be made into the allegations contained herein and adjudging the respondents to be neglectful of these children. Decision on motion and amended petition was reserved and the matter set down for hearing on the adjourned date of July 6, 1972.
The Attorney-General in his answering affidavits on behalf of the respondents entered a general denial of the charges and challenged the jurisdiction of the Family Court over the subject matter and requested that the matter be dismissed without prejudice on the following grounds:
1. Section 8 of the New York Court of Claims Act. The statute waiving immunity of State for harm to private individuals for neglect arising from performance of State function is in derogation of common law and must be strictly construed.
*956 2. An action against public officials in official status is against the State and cannot be maintained without consent.
3. The State is immune from prosecution from liability for neglect except where it has expressly waived immunity or assumed liability by Constitution or legislative enactment.
4. The State is responsible in operation and management of its schools, hospitals and other institutions only for hazards foreseen and risks reasonably to be perceived. It is liable for foreseeable consequences of acts or omissions of agents.
5. The State has the duty to take every reasonable precaution to protect patients at its mental institutions from injury whether self-inflicted or otherwise.
The Attorney-General on behalf of the respondents further argues that the Family Court jurisdiction is concurrent with the Supreme Court and that the Family Court has no jurisdiction over New York State, and the petition is defective because it does not name an individual party as aggrieved and does not name an individual respondent and that the petitioner’s recourse is in article 78 of the CPLB, in the Supreme Court, not a class action in the Family Court, and that the instant proceeding be dismissed and the petitioner directed to proceed in the proper forum.
On July 6, 1972, the date set for all previous hearings on motions and the Louis H. case, petitioner filed a further amended petition and notice of motion asking that the above-described children (under 21 years of age) be committed to the Willow-brook State School (Department of Mental Hygiene) jointly with the City of New York Department of Social Services in accordance with part 3 of article 2 of the Family Court Act and directing the respondent City of New York to contribute toward the expense of the maintenance, surgical, medical or therapeutic treatment and education of said children.
The petitioner in its supporting affirmation to the amended petition and notice of motion cites section 115 of the Family Court Act conferring jurisdiction upon the Family Court as to the abuse and neglect proceedings set forth in article 10 of the Family Court Act as well as proceedings to permanently terminate custody of a child under 18 years of age as set forth in article 6 of the Family Court Act, part 1 thereof, conferring jurisdiction upon the Family Court as to proceedings concerning mentally retarded children. Petitioner states that all of the children at the Willowbrook State School are mentally retarded and that the affidavit of the petitioner and the detailed minutes of the public hearing annexed to the petition unequivocally show *957 that the conditions of the Willowbrook State School are such that the children housed therein are being neglected and that the facts set forth by the petitioner and the many witnesses who testified at the public hearing show that the State did not meet its responsibilities to the children under its care because of foreseeable hazards, risks and consequences under the acts and omissions of the State and its agents.
The petitioner further states that section 1012 of the Family Court Act permits the bringing of a neglect petition against a child’s parent, or “ other person legally responsible for his care ” who does not adequately supply the child with food, shelter, education or medical or surgical care. Also, subdivision (b) of section 119 of the Family Court Act which states that the person legally responsible for the child’s care includes the child’s custodian, guardian or any other person responsible for the child’s care at the relevant time and that all of the children at Willowbrook are under the custody and responsibility of the State Department of Mental Hygiene while they are housed at said institution. In other words, Willowbrook is a “ person ” responsible for the child’s care under this definition.
Petitioner also alleges that section 142 of the Family Court Act provides that a Judge may officially visit any school or institution to which any person within the jurisdiction of the court may be remanded or committed as proof that the law confers jurisdiction to the Family Court Judge to officially visit Willow-brook and that is sufficient to act upon what he finds there.
Petitioner further argues that section 234 of the Family Court Act provides that the Family Court may commit a mentally defective child upon satisfactory proof of the need of such child and that the court may make an order for the maintenance, surgical, medical or therapeutic treatment, hospital care, appliances and devices and education and that the cost of such maintenance, treatment, etc. shall be a charge of the City of New York, and that section 141 of the Family Court Act gives a Family Court ‘1 wide discretion ’ ’ so that its action may fit the particular needs of those before it. Petitioner states no other court has the specific powers over children and mentally retarded children as does the Family Court.
Also, section 1032 of the Family Court Act allows the Society for the Prevention of Cruelty to Children to be a petitioner and that there is no requirement to name all of the children under the care and custody of Willowbrook State School; and, this court, if it accepts this petition, can direct the respondent City of New York Department of Social Services, to assist in *958 the support and maintenance of these children, and further, that since the State Department of Education is not adequately providing for the education and training of the children at Willowbrook, this court may direct the City of New York to assist financially and otherwise in the education and training of said children.
Petitioner alleges also that because all of the children at Willowbrook are mentally retarded, a class action in the Family Court is the proper recourse and not an article 78 proceeding in the Supreme Court.
This amended petition accordingly named the City of New York Department of Social Services and the Commissioner of Education of the State of New York as additional respondents in addition to the original respondents, the Department of Mental Hygiene, the State of New York, and the Board of Visitors of Willowbrook State School.
The Attorney-General, in answering the petition, amended petition and notice of motion, states that section 142 of the Family Court Act does not apply. A mere visitation of a Family Court Judge does not, under the Family Court Act, permit him to conduct an investigation into the allegations and that the proper party to conduct an initial investigation under section 131 of the Mental Hygiene Law is the Commissioner and that since the Legislature gave this investigative authority to the Commissioner of Mental Hygiene, a Family Court Judge does not have the power to so act and that said powers and procedures vested and delineated in the Mental Hygiene Law do not apply to grant the Family Court jurisdiction over the present pending proceeding.
Decision was reserved on this motion and amended petition until the adjourned date, July 27, 1972. On the return day of the motion and the hearings hereunder, July 27, 1972, the City of New York Department of Social Services did not appear, nor did the Commissioner of Education of the State of New York appear.
Based on all of the foregoing pleadings, petitions, amended petitions and motions, the manifold issues for determination by this court are presented in a sympathetic framework:
1. Does the Family Court have jurisdiction over the welfare of institutionalized children at Willowbrook under section 1012 of the Family Court Act? Is the State of New York, through Willowbrook, a “ person ” legally responsible for a child’s care.
2. Does the Family Court under section 1013 of the Family Court Act which gives it exclusive original jurisdiction under *959 article 10 over the abuse and neglect of children apply to institutionalized children as these in Willowbrook, presently under care, custody and control of the Department of Mental Hygiene of the State of New York?
3. Does the Family Court under subdivision (a) of section 231 have jurisdiction over mentally retarded or mentally defective children at State institutions such as Willowbrook and the Board of Visitors of such institution?
4. Does the Family Court Act, section 142, which provides that a Family Court Judge may officially visit any school or institution to which any person within the jurisdiction of the court may be remanded or committed, apply to institutions such as Willowbrook under the jurisdiction of the Department of Mental Hygiene of the State of New York?
5. Can the Family Court order the City of New York to assist in the support, care and maintenance of children at State institutions such as Willowbrook if there is a finding of neglect against such institution within the Family Court Act?
6. Is the State Department of Education responsible if children at Willowbrook are not receiving proper education and if so, are they neglected children within the purview of section 1012 of the Family Court Act?
The answer to all of these questions lies in the various sections of the Family Court Act, Mental Hygiene Law and Education Law, and a microscopic examination of the legislative intent in passing the Family Court Act of 1962 and its subsequent amendments.
The Family Court has exclusive original jurisdiction over abuse and neglect proceedings as set forth in article 10 of the Family Court Act. (Family Ct. Act, § 115, subd. [a], par. [i].)
The Family Court, although a court of record created by the Constitution, is a court of limited jurisdiction. Its jurisdiction is limited to powers set forth in the Constitution of the State of New York (art. VI, § 13). Family Court is confined in its action to powers granted to it by the precise language of this section. (Matter of Burns v. Burns, 53 Misc 2d 484; Graham v. Graham, 43 Misc 2d 89.)
Generally, the provisions of article 10 of the Family Court Act are concerned with parental behavior only. Nowhere in this act, particularly section 1031 thereof, which deals with neglect and child protective proceedings, is any specific jurisdiction given to the Family Court over neglected children in such institutions as Willowbrook. The tenor of applicable case law construing this section states that the court can act only *960 in cases of natural persons such as parents, guardians, relatives, etc. The word “ home ” in the cases refers to individual homes of parents, not institutions such as Willowbrook. (Matter of “H.” Children, 65 Misc 2d 187.)
The welfare of the child is the object in both neglect and delinquency proceedings and, in both, inquiry is addressed as to whether the child’s welfare requires his removal from his home. (Matter of Blaine, 54 Misc 2d 248; Matter of T., 64 Misc 2d 28.)
Also section 1011 of the Family Court Act states as its purpose that: ‘1 this article is designed to establish procedures to help protect children from injury * * * and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met ” (emphasis added).
Accordingly, it is obvious that the Family Court acts or intrudes upon the primary responsibility of the parents in meeting the needs of their children only when parents are unable to do so. The law properly provides for intervention by society when parental care is deemed dangerously faulty or insufficient. But the question is one of degree and the law must be flexible enough so that the State may intrude upon the sanctity of the family only in the most justifiable circumstances. (Children’s Bureau, U. S. Dept, of Health, Education and Welfare, The Abused Child 5 (1963), as reported in Paulsen, The Legal Framework for Child Protection, 66 Col. L. Rev. 679; Family Ct. Act, art. 10; see, also, Penal Law, § 260.10.) Professor Paulsen stated that in every State the law has provided for intervention when parental care is faulty or insufficient.
The Fourteenth Amendment to the United States Constitution protects the rights of families. Some of these rights include not merely the freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children. (Meyer v. Nebraska, 262 U. S. 390, 399; 7 Columbia Journal of Law and Social Problems, An Appraisal of New York’s Statutory Response to the Problem of Child Abuse, 51, 59.)
The emphasis upon the words parent, parental care, and family emphasizes strong legislative and case law interpretation thereof that New York State child protective procedures of the Family Court Act are not intended for institutions such as Willowbrook.
*961 Also ruled out by mandated legislative intent and verified in applicable case law is the contention by the petitioner that the term “ other persons ” legally responsible for a child’s care is an institution such as Willowbrook which is under the jurisdiction of the Department of Mental Hygiene of the State of New York. The history connected with the origins of the Family Court statutes and its predecessor courts, and the facts the Legislature had in mind, are necessary to understand the purpose sought to be effected and the evil sought to be remedied. Not even by the most strained or liberal rules of construction could the present Family Court Act be interpreted to include State institutions such as Willowbrook within its purview. No statute, legislative intent or case law could be more clearly mandated. (Matter of Yvette R., 61 Misc 2d 20; Matter of Maynard v. Shanker, 59 Misc 2d 55; People ex rel. Johnson v. Michael, 39 Misc 2d 365; Report of Joint Legislative Committee on Court Re-organization [Report No. 2], Jan. 30, 1962, pp. 13-14 under the paragraph heading “ Scope of Proceedings ”.)
There is no discernible change in the new article 10 for child protective proceedings, section 1011 and section 1012, as to legislative intent. Accordingly, the expressed intent of the Legislature in the present statutes is to limit neglect cases to natural persons such as parents, relatives, guardians, or other natural persons legally responsible for the care of the child. This must guide us until future amendment or specific changes in the law granting the Family Court drastically increased jurisdiction and powers to cover neglected children in State institutions such as Willowbrook.
It is also carefully to be noted that the Legislature never removed or amended sections 44, 86 and 131 of the Mental Hygiene Law to give jurisdiction to the Family Court over neglect cases in institutions such as Willowbrook, either concurrently with the State Department of Mental Hygiene or exclusively. These powerful and specifically enumerated powers, given to the Commissioner of Mental Hygiene in his jurisdiction over Willowbrook, legally precludes any jurisdiction by the Family Court.
By an exhaustive examination of legislative intent and cases construing section 115, nowhere is there to be found, even by the most strained or liberal interpretation, jurisdiction over institutions such as Willowbrook. Since section 115 and article 10 in the Family Court Act must be read together, regrettably there is no legislative intent under present statutes to open the door *962 to Family Court help or assistance in the many documented cases of child neglect found in Willowbrook.
Likewise, and by analogy as to legislative intent and case law based on all of the foregoing, there is no cause of action against the City of New York Department of Social Services and the State of New York Commissioner of Education, under section 234 and section 141 of the Family Court Act. For reasons set forth in detail above, Willowbrook is not a person legally responsible for children’s care within purview of the Family Court Act and the Family Court has no jurisdiction of all children with retarded mental development already in a State school under the jurisdiction of the Department of Mental Hygiene. (Matter of Yvette R., supra; Family Ct. Act, §§ 231, 233; Mental Hygiene Law, § 124; Education Law, § 4403; Public Health Law, § 2581; Social Services Law, § 371.) The cases construing the above sections of the Mental Hygiene Law, Education Law, Public Health Law, and Social Welfare Law have reference to children whose parents or guardian neglect or refuse when able to provide educational, medical, surgical or hospitalization for such child. (Matter of Vasko, 238 App. Div. 128; Family Ct. Act, § 232.)
The Family Court as presently constituted is not only a court of limited jurisdiction but one of limited staff and facilities. It is a heavily overburdened court and in view of the realities and practical reasons involved could not possibly undertake the investigation and other relief demanded by the petitioner in its petitions, amended petitions and motions. The Legislature foresaw that, in limiting the role of the Family Court to child neglect and abuse cases and mentally retarded children in private homes involving natural persons only, such as parents, relatives, guardians, persons standing in loco parentis, etc.
The authority of the Family Court to deal with the abused, neglected or physically handicapped child is not limited to ‘1 drastic situations ” or to those which constitute a “present emergency”; rather the court has wide discretion to order medical or surgical care or treatment for an event over parental objection if in the court’s judgment the health, safety and welfare of the child require it. (Matter of Sampson, 65 Misc 2d 658, affd. 37 A D 2d 668, affd. 29 N Y 2d 900.)
The Domestic Relations Court (Children’s Division), predecessor to the Family Court, was held to have limited jurisdiction only in specific instances of neglect or delinquency and not extending to general enforcement of the penal provisions of the Education Law. The Children’s Court and the Domestic *963 Relations Court of the City of New York of which it was a part (L. 1933, eh. 482) are courts of inferior and limited jurisdiction. Such jurisdiction will never be presumed and the facts necessary to confer jurisdiction in any particular case must affirmatively appear in the record. (Gardner v. Domestic Relations Ct., 184 Misc. 44, citing People v. Smith, 266 App. Div. 57, 60.)
This case is a good example of the limited power of the Family Court and by analogy it would have no power or jurisdiction over Willowbrook. The legislative latitude in conferring jurisdiction upon such courts is circumscribed by constitutional limitation. It may confer such jurisdiction as may be necessary for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors and for the correction of adults responsible for or contributing to such delinquency, neglect or dependency. (N. Y. Const., art. VI, § 13; N. Y. City Domestic Relations Ct. Act, § 2, subd. [17].)
Although the jurisdiction of the Family Court, successor to the Domestic Relations Court, has been widened considerably and we have today a much more broadened and enlightened statute, there never was given to this court any such jurisdiction, specifically or by the most liberal construction of legislative intent, over institutions such as Willowbrook. (Family Ct. Act, §§ 115, 231, 232, 234, 1011, 1012 [L. 1962, ch. 686, as amd. by L. 1962, chs. 687, 700, 702, 703].)
Although this court has no jurisdiction under the present statutes, it cannot help but express its feelings regarding the horrible conditions at Willowbrook as documented in over 300 pages of minutes of the week-long hearings held in the early part of this year qnd made a part of the petition.
Such conditions are a blot on the conscience of New York State. The shocking apathy of the public was rudely awakened by the newspaper and other media, spotlighting the dreadful conditions at Willowbrook where the most helpless and defenseless of our citizens were left living “ on a thread of life, human vegetables rotting in inadequate warehouses ”, the living among the dead, the dead among the living.
The glory seekers have drained all the publicity out of Willow-brook for their own selfish purposes and have long since fled the scene. The ghosts of apathy are again returning, but there is light and hope in the encircling gloom.
As Winston Churchill so eloquently and truthfully said, “ The mills of the Cods grind but they grind exceedingly slow ’ ’. It is to be hoped that the legislative and executive branches of the *964 State government will remedy the subhuman conditions at Willowbrook by providing sufficient funds to operate such institutions as Willowbrook or phase them out altogether for smaller, more personal institutions or provide foster care in family units where possible, as is done in cases involving neglect.
Also important is more specific legislation as to what judicial review is available and in which courts, to correct wrongful conditions such as arose at Willowbrook and to prevent a multiplicity of law suits and fragmentation of the existing court system. It is self-evident from a perusal of the minutes that the board of visitors, whose membership consists of well-meaning persons, cannot do an effective job since it reports to the executive branch of government. Under present law the Department of Mental Hygiene sets down its own policy, conducts its own investigation and in effect is prosecutor, Judge and jury within its own domain. It was shocking to read in the minutes about the Director of Willowbrook pleading with the Commissioner of Mental Hygiene for more money to properly run the institution only to be informed there was none and that staff and budget cuts had to be made — a budget gap of some 27 million dollars and an attrition in staff resulting therefrom of some 900 persons for an institution of over 5,000 people. The resulting conditions at Willowbrook were not only appalling but frightful.
No one is above the law, not even the sovereign State of New York and its Department of Mental Hygiene. Yet in all fairness, if they do not receive necessary funds to operate institutions such as Willowbrook, how can they be faulted when their appeals fall on deaf ears and result, in despondent exercises in futility. Mentally retarded children suffering from neglect caused more by acts of omission rather than commission cannot wait for budgets to be balanced or funds found for their care. They may be dead tomorrow.
The time for rhetoric, excuses and regret has long since passed. The correction of conditions of children at institutions such as Willowbrook revealed in the hearings and in the present petitions is of immediate importance. Otherwise, we are heading for an irretrievable breakdown not only in justice but in basic humaneness.
The time for more hearings has also long since passed. Otherwise, the hearings already concluded become a fiction and ‘ ‘ no fiction can destroy constitutional guarantees.” (Sharkey v. Thurston, 268 N. Y. 123,126).
*965 The application of such constitutional guarantees for each child at Willowbrook so that his full potential no matter how limited can be obtained, should be the newest mission of the law. The right to life, liberty and the pursuit of happines is not reserved to the healthy, able-bodied children and adults. It applies with even more force and intent to the helpless, the physically handicapped, the mentally retarded, the mentally defective and the most unfortunate of children such as those at Willowbrook. Only then can we say: 11 The walls that are laid in darkness may laugh to the kiss of the sun ”.
On the basis of all of the foregoing, present law, statutory and case and interpretations thereof as well as strong legislative intent, the decision of this court most regretfully is as follows:
1. The Family Court, as presently constituted, has no jurisdiction over the welfare of institutionalized children at Willowbrook State School. (Family Ct. Act, § 115, subd. [a], par. [i]; § 1012.)
2. The Willowbrook State School and the Department of Mental Hygiene are not within the definition of respondent which includes any parent or other person legally responsible for a child’s care who is alleged to have neglected such child. (Family Ct. Act, § 1012, subd. [a].)
3. The Family Court has no jurisdiction under subdivision (a) of section 231 over mentally retarded children or mentally defective children at Willowbrook State School whose jurisdiction is strictly under section 131 of the Mental Hygiene Law (N. Y. Const., art. VI, § 13).
4. The Family Court has no jurisdiction over the Board of Visitors of Willowbrook State School.
5. Section 142 of the Family Court Act which provides that a Family Court Judge may officially visit any school or institution to which any person within the jurisdiction of the court may be removed or committed does not give a Family Court Judge authority to institute an investigation of a State school such as Willowbrook which is under the jurisdiction of the Department of Mental Hygiene of the State of New York.
6. The Family Court has no jurisdiction or authority to order the City of New York Department of Social Services to assist in the support, care and maintenance of children at Willowbrook, since the Family Court has no jurisdiction to make a finding of neglect against such an institution within the meaning of section 1012 of the Family Court Act.
7. The Family Court cannot hold the State Department of Education responsible if the children at Willowbrook are not *966 receiving proper education, since the Family Court has no jurisdiction to declare them neglected children within the purview of section 1012 of the Family Court Act.
The Family Court does not have jurisdiction to hear and determine proceedings involving violation of compulsory education provisions. (Matter of Elwell, 55 Misc 2d 252.)
8. In view of the intensely personal and human rights involved and in view of the facts, legislative intent, statutory construction thereof and case law applicable thereto all hold that cases of neglect under section 1012 of the Family Court Act and cases involving mentally retarded children under subdivision (a) of section 231 all apply to parental behavior, natural persons, relatives, guardians, persons standing in loco parentis and other natural persons responsible for the care of a child, there can be no class actions in the Family Court. Each case is different and must be determined on its own merits.
Accordingly, all petitions, amended petitions, and motions are dismissed, since the Family Court, for reasons specifically herein above set forth, has no jurisdiction over Willowbrook State School in any way, manner or form.