*597 OPINION OF THE COURT
Guy P. De Phillips, J.
The Commissioner of Social Services of the City of New York instituted child abuse proceedings against Gina C., the sole named respondent, with respect to two children — Travis S., born April 18, 1984, and Jessica C., born December 7, 1985. It is alleged that the child Travis sustained a spiral fracture of the right femur on or about March 3, 1986 while in the care of the respondent who at that time was his regular babysitter. Additionally, it is claimed that respondent’s explanation of the injury is "inconsistent with the nature of the injury”. Respondent is the mother of the child Jessica. It is undisputed that respondent is no longer the baby-sitter for Travis and that apart from the aforementioned injury to Travis, there is no allegation of respondent’s abusing or neglecting her child, Jessica, or Travis. It is also stipulated that respondent is unrelated to Travis and performed her baby-sitting services in her own home, not in Travis’ home, on a weekly basis consisting of two days per week for some 15 months for varying daily periods of up to eight hours per day. The parents of Travis have not been named as respondents. After issue was joined and prior to fact finding, respondent orally moved to dismiss these two child abuse petitions on the ground that under these circumstances she is not a properly named respondent within the contemplation of Family Court Act article 10. Petitioner contends that the court has and should retain jurisdiction over Gina C., the baby-sitter, as a properly named respondent because she was the "person responsible for [Travis’] care at the relevant time” (Family Ct Act § 1012 [g]) and a finding of abuse or neglect as to Travis would justify a derivative finding of abuse or neglect as to respondent’s own child, Jessica (Family Ct Act § 1046 [a] [i]).
Family Court is a court of record and of limited jurisdiction. "[I]t has only such jurisdiction and powers as the Constitution and the laws of the State expressly grant it * * * [I]t can only determine matters before it in accordance with the powers expressly granted to it” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29-A, Family Ct Act § 115, p 23). Family Court Act article 10 entitled "Child Protective Proceedings” concerns child neglect and abuse proceedings. Its purpose as stated in Family Court Act § 1011 is "to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well- *598 being” by providing "a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met”. (Emphasis supplied.) Parental responsibility for the caring of children with the correlative rights and duties adhering therein is accorded primacy. It is recognized that the State may intervene "into family life against the wishes of parents only when they are unwilling or unable to care adequately for their children” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29-A, Family Ct Act § 1011, p 217; emphasis supplied).
In determining whether jurisdiction exists with respect to the respondent baby-sitter, the court looks to the language of the controlling statute: "When used in this article [Family Ct Act art 10] and unless the specific context indicates otherwise:
"(a) 'Respondent’ includes any parent or other person legally responsible for a child’s care who is alleged to have abused or neglected such child * * *
"(e) 'Abused child’ means a child less than eighteen years of age whose parent or other person legally responsible for his care [has abused said child] * * *
"(f) 'Neglected child” means a child less than eighteen years of age
"(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care” (Family Ct Act § 1012; emphasis supplied).
Prior to 1972 the term "other person legally responsible” was interpreted by case law to extend to a guardian or a person, who was acting in loco parentis (see, Matter of Yvette R., 61 Misc 2d 20, 22 [Fam Ct, Bronx County 1969]; Matter of Maynard v Shanker, 59 Misc 2d 55 [Fam Ct, NY County 1969]).
In 1972, Family Court Act § 1012 (g) was enacted into law (L 1972, ch 1015, § 2). This subdivision states: " 'Person legally responsible’ includes the child’s custodian, guardian, any other person responsible for the child’s care at the relevant time. Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child” (emphasis supplied). The legislative history of this statute shows that opposition to the proposed *599 definitions of "person legally responsible” was based on the apprehension that the definition was too broad, vague and inexact as to inhibit rational enforcement of the child abuse and neglect laws. It appears that the goal of the new definition was to "give the Family Court jurisdiction over cases in which a paramour is responsible for the abuse or neglect of a child” (statement by bill’s sponsor, Assembly Speaker Perry Duryea, Jr., in letter to Governor, May 25, 1972, Bill Jacket, L 1972, ch 1015). Perusal of the transcript of the Senate session held May 11, 1972, wherein the supplemental definition (Family Ct Act § 1012 [g]) was adopted, discloses that Senator Dunne explained the purpose of the bill as clarifying "the meaning and the proof of emotional child abuse or neglect” without reference to the broadening of the definition of "person legally responsible”. Requests for clarification were voiced in view of opposition to the bill by the joint committee on child abuse predicated on the apprehension, in part, that the proposed definition of a "person legally responsible” (Family Ct Act § 1012 [g]) would lead to "prolonged litigation and obscuring the purpose of this act”. Senator Dunne responded that he believed the bill did not broaden in any sense, but merely clarifies. With this response, the bill was passed 56 to 1. This legislative intent was recognized by the courts. In Matter of Roman (94 Misc 2d 796, 800-801) the Family Court, Onondaga County, declared: "In 1972, the Legislature broadened the concept of a 'person legally responsible’ to pull within its net persons continually or regularly found in the same household as the child * * * Their intent was clearly to equip the Family Court with a jurisdictional foundation upon which to hear cases where the natural parent’s paramour was responsible for the abuse or neglect of child. As nonconventional living arrangements become increasingly prevalent, it became necessary to give the children in those situations the same protection as children in the more traditional family unit * * * The amendment was designed to promote the original purpose of assuring 'that the home satisfies at least the minimal requirements of a suitable place for a child to grow.’ * * * The 1972 amendment to the act was a rational response to a changing social environment” (emphasis supplied).
Subsequent to the enactment of section 1012 (g), the courts continued to view the term "parent or other person legally responsible” as meaning a parent or one acting in loco parentis. (See, Matter of Maureen G., 103 Misc 2d 109.)
*600 It is clear that the concepts of family, of the privacy of parental responsibility in the caring for children and of family right to privacy are echoed in the definition of who may be named as a respondent in a child neglect or abuse proceeding. Those concepts similarly guide the court in determining when to retain jurisdiction. Reading of Family Court Act § 1012 (a) and (g) together, the order of priority of possible respondents in an article 10 proceeding is parent, child’s custodian, guardian or any other person responsible for the child’s care at the relevant time. It is equally clear, therefore, that parental responsibility or its functional equivalent within a family setting in terms of the propriety of care being rendered to the child is the focus of the inquiry to be made in the Family Court (cf the definition of respondent set forth in Family Ct Act § 1012 [a] and [g], with § 1011).
To reiterate, the Legislature in promulgating Family Court Act article 10 provided a due process procedure whereby the State as parens patriae may intervene in the parent-child relationship or its functional equivalent within a family setting where necessary to protect a child. Apart from this, there is no provision in article 10 for the Family Court to intervene in other adult-child relationships. Although the Legislature defined family in article 10 in broader terms than the traditional mother-father-child, their intent is still to limit the Family Court’s jurisdiction to those cases where families are involved. This broader definition of family may include a paramour or a baby-sitter found regularly in the household. However, it was not intended to include those unrelated to the family context; performing child care services outside of the household such as doctors, teachers, and baby-sitters. (See, e.g., Matter of Maynard v Shanker, 59 Misc 2d 55, supra.) Article 10 was implemented to protect a child from a parent or other person legally responsible for his or her care. It was not implemented to protect a child against any and all dangers produced in society.
Abuse or neglect is founded on a departure from acceptable child-caring standards, whether by commission or omission, so as to constitute an impairment or danger of impairment of the child’s physical, mental or emotional health. The gravamen of allegations of abuse or neglect is the status of the child’s care at the relevant time. Viewed in this context, the definition of respondent (apart from "any parent”) as "other person legally responsible” is reduced to "other person responsible”, that is the modifier "legally” obtains from the definition of respon *601 dent in subdivision (a), but not in the supplemental definition in subdivision (g). In endeavoring to resolve this ambiguity, the court resorts to accepted methods of statutory interpretation. "Under a rule of statutory construction sometimes referred to as the rule of noscitur a sociis, words employed in a statute are construed in connection with, and their meaning is ascertained by reference to the words and phrases with which they are associated” (McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [a]). Under Family Court Act § 1012 (a), the meaning of the phrase "person legally responsible” is construed by referring to the term "parent” with which it is associated. Therefore, a "person legally responsible” must be in an analogous position to a parent and the relationship must be legal in nature. By virtue of the supplemental clarification set forth in section 1012 (g), "custodian”, and "guardian” fall within the definition. The phrase "other person responsible for the child’s care at the relevant time” which is the last and most general classification in subdivision (g) must be read in connection with the preceding terms — "parent”, "custodian” and "guardian”. Although the Legislature in subdivision (g) utilized the supplemental catch-all definition of respondent as "any other person responsible for the child’s care at the relevant time”, it still found it necessary in that same enactment to broaden the definition of "custodian” to include "any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child.” Clearly, if the Legislature intended the terms "custodian” and "guardian” to be interpreted to include any person supervising a child at any time regardless of the nature of the relationship as might be indicated by the last (catch-all) phrase of subdivision (g), this amplification would not be necessary. Conversely, the amplification of the term "custodian” set forth in subdivision (g) impels the conclusion that the last catch-all phrase of said subdivision is not as expansive as it seems, but is limited to the functional equivalent of parent in a household setting. (Cf. Matter of Arlene D., 70 Misc 2d 953, 959-961.) To conclude, if the term "person legally responsible” included any adult supervising a child, then the Family Court might have jurisdiction over an extraordinary number of persons as, for example, teachers, day care workers, school bus drivers, neighbors, friends, etc.
A procedural note: "The Family Court as presently constituted is not only a court of limited jurisdiction but one of *602 limited staff and facilities. It is a heavily overburdened court and in view of the realities and practical reasons involved could not possibly undertake the [jurisdiction] demanded by the petitioner * * * The Legislature foresaw that, in limiting the role of the Family Court to child neglect and abuse cases * * * in private homes involving natural persons only, such as parents, relatives, guardians, persons standing in loco parentis, etc.” (Matter of Arlene D., supra, at p 962.)
In view of the facts that the parents of Travis are not charged with abuse or neglect, the respondent baby-sitter performed her services outside the home of the parents and is no longer employed to care for the child, said baby-sitter is not a properly named respondent.
The embracive grant of jurisdiction to Family Court over a wide range of potential respondents under article 10 is balanced by the realizations that in situations where the Family Court processes are inappropriate, insufficient or not needed, the court may decline to exercise jurisdiction. For example, the "family court may transfer upon a hearing any proceedings originated under [article 10] to an appropriate criminal court or may refer such proceeding to the appropriate district attorney if it concludes, that the processes of the family court are inappropriate or insufficient” (Family Ct Act § 1014 [a]; emphasis supplied).
Further, with respect to a neglect petition, if the court determines that its aid is not required, it has no discretion, but must dismiss the petition even though facts establishing the Family Court’s jurisdiction have been established (Family Ct Act § 1051 [c]). Notably the statute is silent as to whether the Family Court has discretionary power to dismiss an abuse petition under circumstances where the court determines its aid is not required. The implication of such residual power in the court to be exercised under appropriate circumstances comports with common sense and the policy underlying article 10. It is reenforced by the 1972 amendment adding subdivision (g) to Family Court Act § 1012. As already noted, said subdivision provides that a custodian "may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child”. The import of retention of the modifier "legally” in connection with the status of the person responsible for the child’s care (§ 1012 [a]) coupled with the use of the discretionary term "may” in the definition of "custodian” set forth in subdivision (g), limned *603 against the purpose and policy underlying article 10 warrants the conclusion that discretion is vested in the court to dismiss an abuse proceeding when its aid is not required. It has been noted that the permissive nature of the supplemental definition of section 1012 (g) warrants the conclusion that "the Family Court may, but need not, assume jurisdiction of such cases. The most obvious example of the need for flexibility is when circumstances change. For example, Court action may not be needed if * * * the same babysitter is no longer used” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29-A, Family Ct Act § 1012, p 270).
It is noted that the relationship of a paramour of a parent to that parent’s child and of a baby-sitter to that same child is vitally different in terms of the functional equivalent of parental responsibility. The baby-sitter is employed to perform a service; the paramour is not. The baby-sitter is the agent, the servant of the parent; the paramour is not. An article 10 proceeding is remedial, not punitive in nature and has as its goal the protection of the physical, mental and emotional well-being of children. The baby-sitter having been discharged by the parents, there is no need for Family Court intervention into family life.
With respect to the baby-sitter’s own child Jessica, the petitioner seeks a finding of abuse or neglect under circumstances where it has acknowledged that there is no independent evidence of abuse or neglect as to such child. Instead petitioner relies entirely on the premise that a finding of abuse or neglect as to Travis is sufficient for a finding as to Jessica. Family Court Act § 1046 (a) (i) states: "In any hearing under this article (i) proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent”. Review of case law discloses that in some instances the proof of the abuse or neglect of one child, albeit admissible on the issue of the abuse or neglect of another child of, or the legal responsibility of, the respondent has not been deemed sufficient to warrant a finding as to such other child absent independent evidence of abuse or neglect as to that child (see, e.g., Matter of Victoria SS., 108 AD2d 989 [3d Dept 1985]; Matter of Cindy JJ., 105 AD2d 189 [3d Dept 1984]; Matter of Richard SS., 87 AD2d 915 [3d Dept 1982]). However, in other instances the proof of the abuse or neglect of one child has been held, of itself, to be prima facie proof of the abuse or neglect of another child of, or the legal responsibility *604 of, the respondent (see, Matter of Christina Maria C., 89 AD2d 855 [2d Dept 1982]). Comparison of these disparate lines of cases prompts the conclusion that the finding of abuse or neglect as to one child may, of itself, justify a finding of abuse or neglect as to the other sibling where the former has been subjected to a form of abuse or neglect so serious, under the circumstances, as to justify finding that there is a substantial risk that the physical, mental or emotional condition of the other sibling is in imminent danger of becoming impaired. This result, as articulated by the Second Department in Matter of Christina Maria C. (supra) is warranted where the circumstances of the abuse or neglect of one sibling logically dictate the conclusion that the parents have such a faulty, perverted or grossly distorted understanding of the duties of parenthood that the remaining sibling is at substantial risk.
It is undisputed that apart from the single unexplained injury sustained by Travis, to wit, a spiral fracture of the right femur, there is no claimed abuse or neglect on the babysitter’s part with respect to Travis or her own child Jessica. The circumstances herein present a qualitative variant in that the two children who are the subjects of these child abuse proceedings are not related to each other and the respondent is, as already noted, the mother of one and the former babysitter of the other. The two children are not members of the same family and did not enjoy the same family setting except for the intervals when respondent cared for the child Travis in her own home. These factors constitute a limiting influence on the process of inferring in logic and common sense that respondent’s own child, Jessica, is at risk only because of a single isolated injury to Travis. There is no involvement of repeated conduct, a pattern of conduct, or heinous conduct on the part of the respondent as to Travis, for whom respondent was rendering child-caring services for a fee, even assuming petitioner is able to make out a prima facie case against respondent as to said child. Reason dictates under these unique circumstances, assuming petitioner sustains its burden of proof with respect to the allegations involving Travis, that a derivative finding of neglect may not be made as to Jessica, absent independent proof of neglect. Succinctly stated: under the stipulated facts and the allegations of the petitions, a finding as to the child Travis will not logically dictate the conclusion that the respondent has such a faulty, perverted or grossly distorted understanding of the duties of parenthood *605 that her own child Jessica is at substantial risk absent some independent indicia of neglect as to Jessica.
Accordingly, the court concludes that respondent is not a properly named party respondent on the petition involving the child Travis and, assuming respondent is so properly named, that said petition should be dismissed as the intervention of the Family Court is not required under the circumstances delineated above. As to the child Jessica, the court holds under the circumstances herein, as defined by the allegations of the petition and the facts stipulated to by the parties, that the petition should be dismissed because there is no showing of abuse or neglect as to Jessica independent of the alleged injury to Travis and such injury, of itself, may not serve as a basis for a derivative finding of neglect as to Jessica.