*852 OPINION OF THE COURT
Howard Spitz, J.
This custody proceeding pursuant to Family Court Act § 651 concerns Baby Girl P., a child almost 21A years old, who was placed in foster care by her mother shortly after birth. The petitioner, who is a friend of the father, commenced this proceeding seeking custody of the child. Respondent, Commissioner of Social Services, moves to dismiss the petition on the ground that the petitioner lacks standing to petition for custody as she is a stranger to the child, having had no previous relationship whatever with her.
FACTS
The child was born out of wedlock on April 6, 1991 with a positive VDRL for syphilis and a positive toxicology for cocaine. Respondent mother voluntarily placed the child with respondent Commissioner on April 23, 1991 and she has been living with foster parents ever since. The foster parents have statutory standing to be heard and were granted leave to intervene (Social Services Law § 383 [3]). The child’s natural father is presently incarcerated having been convicted in Bronx County, Supreme Court on May 12, 1992 on several counts of first degree rape and first degree sodomy and was sentenced to 10 to 20 years’ imprisonment. He was adjudicated the biological father of the subject child by an order of filiation on December 11, 1992.
The petitioner commenced this proceeding on March 11, 1993 against the father, mother and the Commissioner of Social Services. She alleges in her petition that she has a relationship with the child’s father, who is incarcerated, is pursuing custody of his daughter and feels she would be a suitable caretaker and provider for the child and that she plans to marry the child’s father in the future.
It should be noted that a proceeding to terminate parental rights is presently pending against the child’s parents (Social Services Law § 384-b). The mother of the child has indicated that in the event the parental rights of the child’s father are terminated, she would be willing to execute a surrender, thereby freeing the child for adoption.
The threshold issue before this court is whether the petitioner has standing to seek custody of the subject child as a nonparent, having no relationship to her by blood or marriage and having had no physical contact with the child.
*853 In order to determine this issue, it is essential to review and evaluate the three pertinent statutes relative to custody (Domestic Relations Law §§ 70, 240; Family Ct Act § 651) as well as the case law on the subject.
THE LAW
The following definition of standing was enunciated by the United States Supreme Court in Sierra Club v Morton (405 US 727, 731-732 [1972]): "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a ’personal stake in the outcome of the controversy,’ Baker v. Carr, 369 U.S. 186, 204, as to ensure that ’the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution’ ”.
For the reasons set forth below, this court does not believe the petitioner has satisfied this standard. The three statutes that grant standing to parties in custody and visitation matters are:
(1) Domestic Relations Law § 70 (a),
(2) Domestic Relations Law § 240,
(3) Family Court Act § 651 (b).
Domestic Relations Law § 70 (a) specifically grants standing to "either parent” to "apply to the supreme court for a writ of habeas corpus” regarding adjudication of custody and visitation matters. In all cases there shall be no prima facie right to custody in either parent. Since this action involves a custody dispute between a nonparent and a parent, section 70 (a) does not apply.
Similarly, while Domestic Relations Law § 240 is silent as to who may petition the court in a custody dispute, the focus is on parents. Section 240 (1) states in part: "In any action or proceeding brought * * * to obtain, by a writ of habeas corpus or by petition and order to show cause, the custody of or right to visitation with any child of a marriage, the court must give such direction, between the parties, for the custody and support of any child of the parties, as, in the court’s discretion, justice requires * * * In all cases there shall be no prima facie right to custody of the child in either parent.”
*854 In this context the term "parties” refers primarily to parents. The term "parents” is most easily substituted for "parties” in the phrase "child of the parties” with little, if any, change in meaning. In common parlance, when we speak of someone’s child, we are usually referring to the child’s parents. The statute on its face, therefore, appears to use the terms "parents” and "parties” interchangeably. It is also significant to note that the last above-quoted sentence of Domestic Relations Law § 240 (1) is also contained in Domestic Relations Law § 70 (a) which applies exclusively to parents.
Section 240 (1) further uses the terms "parents” and "parties” interchangeably, as demonstrated when it continues: "Such direction shall make provision for child support out of the property of either or both parents * * * Such direction may provide for reasonable visitation rights to the maternal and/or paternal grandparents of any child of the parties”.
Subdivisions (1-a) through (2) are largely a guide on how to compute child support based upon parental income. Section 240 (3) (2) permits the court to issue an order of protection which "may require any party * * * to permit a parent to visit the child at stated periods”. Although section 240 does not specifically limit standing to parents, the close proximity of the terms "parents” and "parties”, the apparent use of the terms interchangeably, especially in the phrase "child of the parties”, and the focus on parental means in computing child support, demonstrate that the statute was intended to apply primarily to custody disputes between parents. Section 240 is, therefore, of limited utility here where petitioner is a nonparent having no relationship by either blood or marriage to the child.
Family Court Act § 651 (b) states: "When initiated in the family court, the family court has jurisdiction to determine, with the same powers possessed by the supreme court in addition to its own powers, habeas corpus proceedings and proceedings brought by petition and order to show cause, for the determination of the custody or visitation of minors.”
The instant custody petition was initiated in the Family Court, and therefore, section 651 (b) applies. The question presented is: to what extent does Family Court have jurisdiction over custody matters? More specifically, what powers does the Family Court possess "in addition to” those of the Supreme Court to hear such matters? The language of the statute indicates that the Family Court’s jurisdiction to hear *855 custody cases is broader than the Supreme Court’s (Matter of Whalen v Commissioner of Fulton County Dept. of Social Servs., 152 Misc 2d 251). Like Domestic Relations Law § 240, Family Court Act § 651 (b) is silent as to precisely who has standing to petition. We must, therefore, examine the case law.
A mere friend who is unrelated by either consanguinity or marriage and who has no legal obligations to a child cannot petition for custody without a specific statutory grant of standing (Velasquez v Jankowski, NYU, Nov. 17, 1978, at 14, col 1; Matter of Roland v Brezenoff, 108 Misc 2d 133, 135).
In Velasquez (supra) a former stepparent was denied standing to petition for custody. The court analogized to the well-established rule that statutory child support obligations cease when the stepparent relationship ceases by death, divorce, or otherwise (Family Ct Act § 415; Ruben v Ruben, 123 NH 358, 362, 461 A2d 733; Matter of Kaiser v Kaiser, 93 Misc 2d 36, 38-39; see, Swain v Swain, 250 Cal App 2d 1, 7, 58 Cal Rptr 83). Once the stepparent relationship ceased, the petitioner’s legal obligation to support the child ceased. Without any legal obligation to the child, the petitioner had no standing to petition for custody (Velasquez v Jankowski, supra).
The facts of Matter of Roland v Brezenoff (supra) are strikingly similar to those of the case at bar. In Roland, the court denied standing under Family Court Act § 651 (b) to a former boyfriend of the child’s mother who attempted to petition for custody when the mother voluntarily placed the child with the Department of Social Services (DSS). The court found that the boyfriend assisted in the child’s care sporadically; that there was "no established family pattern”; and that the relationship between the child and nonparent was "one of friendship and not of kinship” (supra, at 134).
In the instant matter, as in Roland (supra), the natural mother voluntarily placed her child in the temporary custody of DSS. Unlike Roland, where there was sporadic contact between nonparent and child which did not rise to the level of an "established family pattern”, here there has been no contact at all. The record is devoid of any evidence of petitioner ever having met the child. Not only is petitioner’s relationship with the child insufficient under Roland and Velasquez (supra), it is nonexistent.
"Extraordinary circumstances” as set forth in Matter of Bennett v Jeffries (40 NY2d 543) and its progeny have served *856 as a basis for granting standing in certain circumstances. However, in all of these cases, there was some nexus between the child and the nonparent who was granted custody (see, Matter of Bennett v Jeffries, supra, at 549, citing Matter of Benitez v Llano, 39 NY2d 758, 759 [prolonged separation from natural parent, child close to majority and attached to a second cousin]; Matter of Jonathan D., 62 AD2d 947 [6V2 years spent in foster home by nine-year-old boy]; Matter of Curry v Ashby, 129 AD2d 310, 317-318 [separation from siblings would be traumatic]; Wohlfahrt v Drees, 103 AD2d 1028 [father was drug addict]; People ex rel. Gallinger v Gallinger, 55 AD2d 1036 [mother showed little interest in child and acquiesced in leaving child in custody of nonparent for prolonged period while preferring to live with her lover]; Matter of Kreslein v Hanley, 157 AD2d 659 [psychological bond between child and nonparent custodian; voluntary surrender by the natural mother, natural mother’s hospitalization for attempted suicide]; Matter of Michael Paul T. v Thomas R., 124 AD2d 970 [child lived with grandparents for six years; natural mother deceased]; Raysor v Gabbey, 57 AD2d 437, 440-441 [mixed race of child, lifelong separation from father; natural mother deceased, relationship with maternal grandparents]).
In all of the above circumstances, the natural parent’s behavior seriously threatened the welfare of a child and the child had a "familial” relationship with a nonparent, either through blood, marriage and/or the nonparent’s rearing of the child.
In Matter of Humphrey v Humphrey (103 Misc 2d 175), the court held that paternal grandparents had standing to file a petition against the mother for custody under Family Court Act § 651 (b) when the natural father was deceased. The court noted that the grandparents had continually lived with and cared for the child for approximately two years prior to the commencement of the proceeding and had frequently cared for him since infancy, even before living with him.
In Guma v Guma (132 AD2d 645), grandparents who had had personal contact with the subject child were granted standing to petition for custody under Domestic Relations Law § 240. In marked contrast, the petitioner here had no relationship with the child by blood, marriage or personal contact.
In Matter of Anonymous v Olson (112 AD2d 299), family friends were found to have standing to petition for custody due to "extraordinary factual circumstances”, and the peti *857 tinners’ obvious involvement with and concern for the children. In that matter the mother of the children was murdered by their father who, as a result, was serving a 25 years to life prison sentence. The petitioners had cared for the children with the consent of the mother’s family since approximately one month after the mother’s death. No such circumstance is found in this proceeding.
The question of standing to petition for custody is largely a question of whether the petitioner has an interest in the welfare of a child. The court, in exercising its jurisdiction, "acts as parens patriae to do what is best for the interest of the child” (Finlay v Finlay, 240 NY 429, 433). In accordance with this rule, Matter of Trapp v Trapp (126 Misc 2d 30) held that anyone with an interest in the welfare of the child has standing to petition for custody under Family Court Act § 651. In Trapp, the court determined that the child’s stepfather had standing to seek custody against the natural mother because he had lived with her and her children for nine years during a key developmental period in the children’s lives, prior to commencement of the proceeding. Under those circumstances, the court concluded that he had an interest in the welfare of the children. Petitioner here has had no contact with the subject child.
In the instant matter, there are presently proceedings pending to terminate parental rights. The Department of Social Services seeks to have the child determined to be permanently neglected by her father and abandoned by her mother. That issue must be decided at a termination hearing. The issue here is whether petitioner has standing to seek custody of a stranger, namely the subject child. The fact that parental rights may be terminated has no bearing on the issue of whether custody should be awarded to petitioner, whose relationship is with the child’s father, not the child.
Petitioner has no blood, marital, caretaking, or social relationship with the child and is, in effect, a complete stranger to her. Granting standing to such a person would open the floodgates of litigation and unduly burden and complicate custody proceedings. As the court in Matter of Humphrey v Humphrey (supra) cogently observed, the Family Court Act was "designed to prevent spurious and malicious suits * * * by disgruntled third parties who may not approve of the life style of the parent or the manner in which the child is being raised” (supra, at 178). Taken to its outermost limits, courts would be required to entertain each and every petition *858 brought by strangers, subjecting parents and custodians to defend such proceedings and creating an environment of confusion and instability ad absurdum.
There will be factual situations when the courts may be required to conduct preliminary hearings to determine the question of standing to file a custody petition. However, in the instant proceeding, no such hearing is required. Neither the petition nor petitioner’s affidavit in opposition to respondent’s motion to dismiss cite any statutory or case law to support her right to petition the court for custody or any factual basis of relationship to grant her standing to so petition.
For all of the aforegoing reasons, this court determines that a person seeking custody of a child lacks standing to petition the court unless he or she can demonstrate some nexus to the child, including but not limited to an interest in the child’s welfare by virtue of a relationship by blood, marriage, legal obligation and/or the previous assumption of caretaking responsibilities. The petitioner in this proceeding having failed to demonstrate such nexus has no standing to initiate a custody action.
The petition is therefore dismissed.