◼ In the Matter of YOLANDA D. ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ALEXANDER W., Appellant. [630 NYS2d 537] —In a child protective proceeding pursuant to Family Court Act article 10, Alexander W. appeals, (1) as

limited by his brief, from so much of a fact-finding order of the Family Court, Orange County (Slobod, J.), entered August 21, 1992, as found that he had sexually abused his niece, Yolanda D., and (2) from a dispositional order of the same court, entered September 28, 1992, upon the fact-finding order which, *inter alia,* directed that an order of protection be entered "proscribing him from being within one thousand (1,000) feet of the subject children".

Ordered that the appeal from the fact finding dated August 21, 1992, order is dismissed, without costs or disbursements, as that order was superseded by the dispositional order entered September 28, 1992; and it is further,

Ordered that the dispositional order is affirmed, without costs or disbursements.

The appellant contends that he is not a proper party to this child protective proceeding since he was not a person "legally responsible" for Yolanda D., pursuant to Family Court Act § 1012 (a), during the periods he allegedly sexually abused the child.

The appellant is the uncle of Yolanda D. Over a three year period, Yolanda D. frequently spent weekends with the appellant and his paramour who were the only adults in the appellant's household. During the summer of 1991, when Yolanda D. was 12 years old, she would spend every other weekend in the appellant's household in Matamoros, Pennsylvania. The record indicates that the sexual abuse, which progressed from fondling to vaginal intercourse, occurred when she was between 10 and 13 years of age. The appellant admitted that Yolanda D. visited with him frequently at his home, and he visited Yolanda D. at her home in Middletown, New York, where the appellant's mother lived, but denied that he had any sexual contact with Yolanda D.

In a prior child neglect proceeding, Yolanda D. and a number of her siblings were found to have been neglected by their mother Edith W. as a result of the mother's abuse of alcohol. As a result Yolanda D. joined a therapy group for children of alcoholics. On September 16, 1991, Yolanda D. disclosed to her counselor and the rest of her therapy group that she was being sexually abused by the appellant.

After a hearing, at which Yolanda D., the appellant, his paramour, and a number of other witnesses testified, the Family Court denied the appellant's motion to dismiss the proceeding on the ground that he was not a proper respondent and found that Yolanda D. had been subjected to progressive sexual contact by the appellant and, derivatively, that four of Yolanda D.'s siblings were neglected by him.

We find that the facts of this case support the Family Court's conclusion that Alexander W. was a proper party to this proceeding.

Family Court Act § 1012 (a) defines a "respondent" as a "person legally responsible for the child's care who is alleged to have abused or neglected such child." The statute further provides that a "person legally responsible" includes the child's custodian, guardian or "any other person responsible for the child's care at the relevant time". (Family Ct Act § 1012 [g].) A "custodian" includes "any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child" (Family Ct Act § 1012 [g]).

Although the "primary effect of the supplemental definition of the word 'custodian' is to authorize child protective petitions against paramours" *(Matter of Department of Social Servs. v Waleska M.,* 195 AD2d 507, 509; *see also,* Besharov, 1984 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, 1995 Pocket Part, at 104), the terms of the statute do not preclude its application to other adults, including non-nuclear family members who exercise care and control over the subject child at the time of the abuse *(see,* Besharov, 1984 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, 1995 Pocket Part, at 104; *cf., Matter of Jessica C.,* 132 Misc 2d 596; *Matter of Kyle H.,* 198 AD2d 913; *Matter of Robert J.,* 178 AD2d 1004).

The purpose of Family Court Act § 1012 (g) in expanding the definition of "respondent" was to more fully protect children from adults, who as custodians—whether on a full-time basis or at regular intervals—are most often in the position to do them the greatest harm *(see,* Besharov, 1984 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, 1995 Pocket Part, at 104). Family Court Act § 1012 (g), as are all the provisions contained in Family Court Act article 10, is designed to "bring to bear protective and rehabilitative services within the child's household" (Besharov, 1993 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, 1995 Pocket Part, at 80; *see generally, Matter of Stephanie WW.,* 213 AD2d 818; *Matter of Charles DD.,* 163 AD2d 744; *People v Kenyon,* 46 AD2d 409). Family Court Act § 1011 provides that the legislative purpose of the statute is to "establish procedures to help protect children from injury and mistreatment and to help safeguard their physical, mental and

emotional well-being" and to "provide due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child, so that his needs are properly met".

In the instant proceeding, the alleged abuser is Yolanda D.'s uncle, who by his own admission, had frequent access to her. Yolanda D.'s mother, the appellant's sister, who has herself been neglectful of her children through her abuse of alcohol, has testified that she does not believe Yolanda D. and therefore does not intend to protect her against the appellant. In view of these circumstances, we find that Alexander W. falls within the category of people contemplated by the definition of "respondent" found in Family Court Act § 1012 (a) as amplified by Family Court Act § 1012 (g).

We are mindful, as is our dissenting colleague, that Family Court Act § 1012 (a) and (g) are not to be interpreted so broadly as to bring within their ambit nonfamily members who exercise fleeting care and custody of a child such as the parents of a child's friend, who may exercise care and control, during a play-date, or an overnight visit. Nor should the statute be permitted to extend to nonfamily members who provide full-time or extended daily care to children outside the household, such as hospitals, doctors, teachers, babysitters, and day-care providers (see, Besharov, 1984 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, 1995 Pocket Part, at 104).

In this regard, we find *Johnson v Jamaica Hosp.* (62 NY2d 523), cited by our colleague, to be distinguishable on its facts. In *Johnson*, the Court of Appeals dismissed a cause of action for emotional distress, finding that the defendant hospital was not acting in loco parentis at the time the plaintiffs' daughter was abducted therefrom.

In sum, review of the legislative history of Family Court Act § 1012 (g) reveals that the intended focus of the Family Court inquiry is parental responsibility or its functional equivalent. Admittedly, it is not to protect a child against any and all dangers produced in society. Based on these principles, we find that there was a sufficient factual basis in this record for the Family Court to find that the role of the appellant during his niece's frequent overnight visits to his home in another State was the functional equivalent of a parent. Therefore, the Family Court properly intervened, as parens patriae, in order to protect this child (see, Matter of Jessica C., supra, 132 Misc 2d 596).

Additionally, we find that any error in admitting into evi-

dence statements of Yolanda D.'s sister was harmless since the Family Court did not rely upon such statements in its fact-finding (see, Matter of Daniel R. v Noel R., 195 AD2d 704).

Moreover, our decision to affirm the Family Court's findings of fact with regard to Yolanda D. renders academic the appellant's argument regarding the derivative findings as to Yolanda D.'s siblings.

We have reviewed the appellant's remaining contentions and find them to be without merit. Pizzuto, J. P., Joy and Friedmann, JJ., concur.

Goldstein, J., dissents and votes to reverse the dispositional order entered September 28, 1992, to vacate so much of the fact-finding order entered August 21, 1992, as found the appellant guilty of sexual abuse, and to dismiss the petition insofar as it is asserted against him, with the following memorandum: The appellant Alexander W. is charged with sexually abusing his niece, Yolanda D. in a proceeding pursuant to Family Court Act article 10.

During the summer of 1991, the then 12-year-old Yolanda D. stayed overnight about two weekends a month in an apartment in Pennsylvania which the appellant shared with his girlfriend. Contrary to the findings of my colleagues in the majority, the appellant and his paramour only shared that apartment from August 1990 until November 1, 1991, and Yolanda D. did not stay with them in that apartment in 1990.

During her visits in 1991, Yolanda D. would visit friends in the area. She spent some of her time with the appellant, playing cards or chess, or watching television. Once, when Yolanda D. became ill with asthma during a weekend visit, the appellant's girlfriend took her home to her mother. Thus, when the child needed medical attention, the appellant did not take responsibility, but left the arrangements to his girlfriend, who, in turn, returned the child to her mother so the mother could arrange for medical attention. There is no evidence in the record that the appellant assumed *any parental responsibilities over her.*

Alexander W. visited his sister, who is Yolanda D.'s mother, on occasions such as birthdays, but the petitioner does not argue that Alexander W. was part of Yolanda D.'s household.

The alleged abuse occurred over a three-year period from around Yolanda D.'s tenth birthday until the summer of 1991. Yolanda D. alleged that she was sexually abused while staying in the appellant's and his girlfriend's apartment in the summer of 1991. It is unclear from the record where Yolanda D. alleged the remainder of the abuse occurred.

Family Court Act § 1012 (a) grants the Family Court jurisdiction over "any parent or other person legally responsible for the child's care who is alleged to have abused or neglected such child". Family Court Act § 1012 (g), defines person legally responsible as: "the child's custodian, guardian, *any other person responsible for the child's care at the relevant time.* Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse and neglect of the child" (emphasis supplied).

Thus, jurisdiction under Family Court Act article 10 may be acquired over a person who "is responsible for the child's care at the relevant time", *or* over a person deemed a "[c]ustodian" because he or she was part of the child's household. The majority intimates that the appellant can be deemed a "custodian". However, since it is not even alleged that he was part of the child's household, such a conclusion is contrary to the plain language of the statute.

Since the appellant was not part of the child's household, jurisdiction could only be acquired over him if he was "responsible for the child's care at the relevant time". A person is legally responsible for the child's care at the relevant time when he or she is acting in loco parentis *(see, Matter of Anthony YY.,* 202 AD2d 740; *Matter of Faith GG.,* 179 AD2d 901; *Matter of Jessica C.,* 132 Misc 2d 596; *Matter of Yvette R.,* 61 Misc 2d 20, 22; *Matter of Children,* 76 Misc 2d 987; *Matter of Maynard v Shanker,* 59 Misc 2d 55). A person acts in loco parentis when he or she intends to assume all the obligations of parenthood *(see, Hadden v Kero-Sun, Inc.,* 197 AD2d 668, 669; *People v Lilly,* 71 AD2d 393; *Rutkowski v Wasko,* 286 App Div 327; *Matter of Jamal B.,* 119 Misc 2d 808, 810-811). The Court of Appeals held in *Johnson v Jamaica Hosp.* (62 NY2d 523, 529), that the status of loco parentis "requires more than mere temporary care and custody; an intent to support and care for the child on a permanent basis must be shown".

The parameters of Family Court Act article 10 were aptly described in *Matter of Jessica C. (supra,* at 600): "[T]he Legislature in promulgating Family Court Act article 10 provided a due process procedure whereby the State as parens patriae may intervene in the parent-child relationship or its functional equivalent within a family setting where necessary to protect a child. Apart from this, there is no provision in article 10 for the Family Court to intervene in other adult-child relationships. Although the Legislature defined family in article 10 in broader terms than the traditional mother-father-

child, their intent is still to limit the Family Court's jurisdiction to those cases where families are involved. This broader definition of family may include a paramour or a babysitter found regularly in the household. However, it was not intended to include those unrelated to the family context; performing child care services outside of the household such as doctors, teachers, and babysitters. *(See, e.g., Matter of Maynard v Shanker,* 59 Misc 2d 55, *supra.)* Article 10 was implemented to protect a child from a parent or other person *legally* responsible for his or her care. It was not implemented to protect a child against any and all dangers produced in society."

The purpose of Family Court Act article 10 is to "bring to bear protective and rehabilitative services within the child's household", not to punish alleged abusers from a child's entire circle of friends, relatives, and acquaintances (Besharov, 1993 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, 1995 Pocket Part, at 80). The law provides other remedies for child abuse "unrelated to the family context" *(Matter of Jessica C., supra,* at 600), including criminal proceedings and civil tort remedies. However, in such cases, the liberal rules of evidence and statutory presumptions applicable to proceedings pursuant to Family Court Act article 10 would not be applicable *(see,* Family Ct Act § 1046; *Matter of Philip M.,* 82 NY2d 238, 244; *Matter of Nicole V.,* 71 NY2d 112, 117-118; *Matter of Department of Social Servs. v Waleska M.,* 195 AD2d 507; *Matter of Roman,* 94 Misc 2d 796, 801-802). In a proceeding pursuant to Family Court Act article 10, application of those evidentiary rules and statutory presumptions does not violate the Due Process Clause, because the "jurisdictional basis of a custodial relationship is not presumed, but rather is a matter to be proved by petitioner" *(Matter of Roman, supra,* at 802).

In the instant case, there is no evidence that Alexander W., in allowing his niece to stay in his apartment on occasional weekends, intended to assume any obligations of parenthood on those weekends. Although Family Court Act article 10 has been interpreted broadly, to include a person "continually involved with the child" *(Matter of Robert J.,* 178 AD2d 1004, *supra),* no such involvement was demonstrated here. Thus, the petitioner failed to meet its burden.

The majority notes that Family Court Act article 10 applies to a "non-nuclear family member", and implies that the appellant falls within that category. If Alexander W. had been a regular member of Yolanda D.'s household, and lived with her in a family setting, he could be considered a family member

subject to the jurisdiction of the Family Court *(see, Matter of Kyle H.,* 198 AD2d 913; *Matter of Amanda LL.,* 195 AD2d 708, *supra; Matter of Department of Social Servs. v Waleska M.,* 195 AD2d 507; *Matter of Commissioner of Social Servs. of City of N. Y. v Jannie S.,* 188 AD2d 528; *Matter of Joey T.,* 185 AD2d 851). However, such was not the case here. The fact that he was related to Yolanda D. by blood is not determinative *(see, Matter of Anthony YY. ,* 202 AD2d 740, *supra; Matter of Mary AA.,* 175 AD2d 362; *Matter of Case,* 120 Misc 2d 100). "When * * * relatives (who do not live with the child) are the perpetrators [of abuse], an Article 10 child protective proceeding is not appropriate" (Besharov, 1993 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, 1995 Pocket Part, at 80).

The majority also contends that jurisdiction can be asserted over the appellant because the child's mother, who was clearly under the jurisdiction of Family Court Act article 10, "does not intend to protect" the child from the appellant. No authority is cited for the imposition of this pendant jurisdiction over the appellant. The implication of that holding is that if a child's parents are unfit, *anyone* with "access" to the child is subject to the jurisdiction of the Family Court Act article 10. There is no statutory support for that holding.

Since the appellant could not be considered a member of Yolanda D.'s household, and the record is devoid of any showing that the appellant intended to or did, in fact, assume any parental responsibilities over her, the Family Court lacked jurisdiction over him *(see, Matter of Akiem Q.,* 209 AD2d 811; *Matter of Commissioner of Social Servs. [Jack M.],* 181 AD2d 631).

Accordingly, the petition, insofar as it is asserted against Alexander W., should have been dismissed for lack of jurisdiction.