*12 OPINION OF THE COURT
Paula J. Hepner, J.
The respondent, Carl S., filed an order to show cause on September 21, 1995 along with supporting affidavits from himself and Gail Derrico (a teacher at one of the children’s schools) and a supporting affirmation from Sally DeLuca, Esq., his attorney. The respondent seeks an order directing the Commissioner of Social Services to provide reasonable and regularly scheduled visitation for him and his stepchildren, Latoya, Elizabeth, Jack and Michael R.[1] Carl S. asserts that he is a "respondent” within the meaning of section 1012 (g) of the Family Court Act and, according to the plain language of Family Court Act § 1030, he must be granted visitation with his stepchildren.
The attorney for the Commissioner of Social Services submitted an answering affirmation in opposition to the relief sought by the respondent. The Commissioner takes the position that visitation with children in foster care, pursuant to Family Court Act §§ 1030,1081 and 1084, is a right reserved for biological, adoptive or legal parents. It is not available to stepparents. As further support for her position, the Commissioner points out that the respondent would not be entitled to pursue visitation under section 70 of the Domestic Relations Law, consequently he should not be entitled to visitation under the Family Court Act.
The Law Guardian for the children also submitted an affirmation opposing Carl S.’s application for visitation on the grounds that he lacks standing to seek the relief requested. The Law Guardian argues that visitation rights under Family Court Act § 1030 et seq. are cross-referenced to the visitation rights established in Family Court Act § 1080 et seq. because these two statutes were enacted as one piece of legislation.[2] Since Family Court Act § 1084 prohibits visitation between an unadjudicated parent and out-of-wedlock children, the Law Guardian contends that the visitation provided for in Family Court Act § 1030 should be similarly restricted. The Law Guardian also asks the court to deny Carl S. any visitation with Latoya at the present time.
*13 LEGAL ANALYSIS
Article 10, part 2 of the Family Court Act sets forth the preliminary orders a court is empowered to make before and after children are temporarily removed from their homes for their protection or welfare. Section 1030 (a) of the Family Court Act provides that "a respondent shall have the right to reasonable and regularly scheduled visitation with a child in the temporary custody of a social services official pursuant to this part * * * unless limited by an order of the family court.” Section 1030 (c) requires that the court grant a respondent’s application for visitation "unless the court finds that the child’s life or health would be endangered thereby.” Once the court decides the child may not be returned to a respondent and enters an order pursuant to Family Court Act § 1051, any interim order for visitation issued under Family Court Act § 1030 (a) automatically terminates in accordance with the provisions of Family Court Act § 1030 (e).
Section 1012 (a) of the Family Court Act defines a "respondent” as including "any parent or other person legally responsible for a child’s care who is alleged to have abused or neglected such child.” A "person legally responsible for the child” is defined in Family Court Act § 1012 (g) as including "the child’s custodian, guardian or any other person responsible for the child’s care at the relevant time.” The definition of "person legally responsible” includes any person having parental responsibility for a child or the functional equivalent thereof within a family setting. (Matter of Yolanda D., 218 AD2d 648 [2d Dept 1995]; Matter of Anthony YY., 202 AD2d 740 [3d Dept 1994]; Matter of Faith GG., 179 AD2d 901 [3d Dept 1992]; Matter of Jessica C., 132 Misc 2d 596 [Fam Ct, Queens County 1986].) Upon the facts presently before the court, respondent Carl S. is a "person legally responsible” and therefore must be considered a "respondent.”
Children within our society are being raised in a variety of familial constellations. They may live in households with an individual unrelated to the child (casual boyfriends or girlfriends of the parent, stepparents, domestic partners of the parent, godparents and putative relatives) or a member of the extended family (grandparents, aunts, uncles, brothers, sisters, cousins). A cause of action for child abuse or neglect may be brought against any of these individuals if they are acting in loco parentis, either for acts or omissions of their own or for the acts of others which they allowed to be committed, or for the acts of others which they "knew or should have known” *14 would be harmful to the child. If facts sufficient to sustain the allegations of abuse or neglect are not adduced, the petition must be dismissed and the children must be returned to those from whom they were removed. To suggest that the Legislature intended to deprive children temporarily placed in foster care from visitation with their former caretakers seems to be, on its face, contrary to generally accepted social services policies and traditional child welfare practices. The statute cannot be so construed without an examination of the legislative history of Family Court Act §§ 1030 and 1080.
Sections 1030 et seq. and 1080 et seq. were enacted in 1988 as part of Senate Bill 4614-C. The bill was sponsored by Senator Mary Goodhue, then Chair of the Senate Standing Committee on Child Care. The memorandum submitted by the Committee explains the purpose of this bill as "establishing] procedures to enforce the visitation rights of non-custodial parents whose children are placed in foster care pursuant to article ten of the Family Court Act or pursuant to provisions of the Social Services Law governing voluntary placements of children in foster care.” All of the substantive comments submitted by governmental, public and private agencies[3] involved with child welfare refer to this as a bill in relation to the visitation rights of noncustodial parents and grandparents. There is no indication in any of these letters and memoranda to suggest the drafters or the commenters were aware that by extending visitation rights to "respondents,” they would be granting visitation rights to individuals other than parents. The memorandum submitted by Social Services Commissioner Cesar A. Perales reads, in pertinent part, "the bill also provides the respondent in a child protective proceeding (i.e. the person who allegedly abused or neglected the child) with the right to visitation when his or her child has been temporarily removed from the home prior to disposition * * * By specifically granting a respondent in a child protective proceeding visitation rights with a child who has been temporarily removed from the home, the bill would help to ensure that the child maintains contact with his or her parent and that the child’s return home is *15 facilitated whenever possible.” (Emphasis added.) The memorandum in support of the bill from Senator Goodhue’s committee does not even mention the word "respondent” or discuss the rights which section 4 of chapter 457 of the Laws of 1988 gives to them.[4]
Based on the foregoing, it is possible to conclude that the rights created under Family Court Act § 1030 et seq. pertain only to visitation by noncustodial parents and grandparents with minors remanded or placed in the care of a social services official, and not to the broader category of respondents which includes "persons legally responsible.” Further support for such a construction of the statute may be found in other legislative enactments (Domestic Relations Law §§ 70-72, 240 [1], [4]; McKinney’s Cons Laws of NY, Book 1, Statutes § 113)[5] and judicial opinions[6] which unequivocally set forth this State’s public policy that only those who are legally related to a child have standing to petition for custodial and visitation rights. Therefore, it would not be unreasonable to similarly limit the enjoyment of the rights established in child protective proceedings to individuals who have been adjudicated a legal parent of out-of-wedlock children.
Nonetheless, the language of the statute specifically and unambiguously states that "a respondent shall have the right to reasonable and regularly scheduled visitation” with a child in foster care. (Family Ct Act § 1030 [a] [emphasis added].) In interpreting statutes, the primary object of the Legislature is "first to be sought from a literal reading of the act itself,” giv *16 ing the words and the language used, its natural and obvious meaning. (McKinney’s Cons Laws of NY, Book 1, Statutes § 111.) The term "respondent” is clearly defined in the Family Court Act to include individuals acting in loco parentis regardless of whether they are related to the child. The rules of statutory construction require that the court give this word its "full significance in the absence of a legislative intent to the contrary.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 113.) At the same time, the court must construe the general word "child,” as used in Family Court Act § 1030, to mean "legitimate child” unless doing so would produce an "absurd, unjust or other objectionable result.”[7] (McKinney’s Cons Laws of NY, Book 1, Statutes § 113.)
Until the court determines whether the allegations of the abuse or neglect have been proved and the child cannot be returned to the respondent(s), visitation between the child and those from whom s/he was removed serves the purpose of maintaining continuity of the family unit, preserves the familial relationship between the child and those who cared for *17 him/her prior to the. removal, and facilitates the child’s psychological and emotional adjustment to foster care during the pendency of the child protective proceeding. For this reason, this court believes that an interpretation of Family Court Act § 1030 restricting visitation to those who are legal parents would produce an unjust and unreasonable result. Accordingly, this court holds that the visitation rights established under Family Court Act § 1030 are enforceable by all of the individuals encompassed within the definition of "respondent” until such time as the court makes an order of disposition. Whether or not visitation should be granted depends on a case-by-case evaluation of the child’s health and emotional well-being. Once a dispositional order is made, respondents who have no legal relationship to the child lose any previously granted visitation, pursuant to Family Court Act § 1030 (e), and have no other statutory authority under which to obtain it.
CONCLUSION
For all of the foregoing reasons, this court concludes that Carl S.’s motion seeking reasonable and regularly scheduled visitation with his stepchildren Elizabeth, Jack and Michael R should be granted pursuant to section 1030 (a) of the Family Court Act inasmuch as there has been no showing that the children’s lives or health would be endangered thereby. The court further concludes that the motion seeking reasonable and regularly scheduled visitation between Carl S. and Latoya R. should be denied inasmuch as Latoya’s biological father has filed for custody and it is conceivable that she may not return to the S. home in the future; the child was residing with the paternal grandmother until recent allegations of harassment and intimidation necessitated her removal; and because the child, who is 12, does not wish to visit with respondent Carl S.
This court believes that it is in the best interests of Elizabeth, Jack and Michael to have visitation with respondent Carl S. take place in the offices of the Child Welfare Administration under the supervision of caseworkers from the agency. Carl S. is not to utilize his visitation time to discuss, with any of the children, the allegations contained in these petitions, the proceedings herein, or their future testimony.

. At the time these proceedings were commenced on April 18, 1995, Carl S. had been a resident of the mother’s home for six years. Carl S. and Annette R-S. were married on September 6, 1995. He has been involved with the children’s day-to-day care, their education, and has functioned as a father figure for these children.

. Laws of 1988 (ch 457).

. Letter of July 27, 1988 from the office of the Mayor of the City of New York; letter of July 20, 1988 by Senator Mary B. Goodhue; letter of July 27, 1988 by Milton Seller on behalf of the Legal Aid Society; memorandum of July 26, 1988 by Joseph J. Cocozza, Executive Director of the New York State Council on Children and Families; memorandum of July 27, 1988 on behalf of the New York State Commissioner of Social Services; and letter of July 22, 1988 by David Roth, Executive Vice President of the Jewish Child Care Association of New York.

. The only opposition voiced in regard to S. 4614-C focused on the differential standard created for visitation between noncustodial parents and grandparents in Family Court Act § 1030 and the standard applicable under Domestic Relations Law §§ 70-72. Under the Domestic Relations Law, a court may deny visitation if it is not in the best interests of the child, and a variety of factors are looked to in determining the outcome. Under Family Court Act §§ 1030 et seq. and 1080 et seq., visitation must he granted unless the court finds it is adverse to the child’s life or health. That the Legislature enacted a more exacting standard for the denial of visitation with children in foster care seems appropriate, however, since it is the State that is attempting to disrupt the parent/child relationship.

. The rules of statutory construction and interpretation provide that "it is a general role of construction that the word 'child’ or 'children’ when used in a statute mean legitimate child or children.”

. Matter of Alison D. v Virginia M., 77 NY2d 651 (1991) (visitation denied to same sex partner of biological mother); Matter of Cindy P., 206 AD2d 615 (3d Dept 1994) (visitation denied to former husband who was neither the biological nor adoptive parent of the mother’s children); Matter of Janet S. M. M., 158 Misc 2d 851 (Fam Ct, Westchester County 1993) (custody denied to fiancee of incarcerated father).

. Were the court to read the word "child” throughout article 10 to mean "legitimate child,” there would be unintended consequences. Doing so would prevent any caretakers except legal parents from exercising the right to challenge the State’s decision to remove children from their homes in a hearing pursuant to Family Court Act § 1027 or the entitlement to a hearing, pursuant to Family Court Act § 1028, for the immediate return of the children following a removal. Such an interpretation would be inconsistent with the express language of Family Court Act § 1022 (d); §§ 1023, 1024 (a) (b) (iii); § 1027 (a) and § 1028 (a) which extend the right to notice and a hearing to parents and other persons legally responsible. What sense would it make to grant persons other than parents who have acted in loco parentis, the right to a hearing for the return of children removed from their care, but deny them the right to visit the children if they lose the hearing and the children are placed in foster care? In construing statutes, "it is a fundamental rule * ** * that a statute or legislative act is to be construed as a whole” (McKinney’s Cons Laws of NY, Book 1, Statutes § 97), and courts are cautioned to avoid constructions of statutes which would "lead to [an] absurd result.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 145.)
In Matter of Roland F. v Brezenoff (108 Misc 2d 133 [Fam Ct, NY County 1981]) the mother’s former boyfriend and neighbor petitioned under Family Court Act § 651 for custody and visitation with her child. The court denied his petition on the grounds that he lacked standing to seek the relief requested. In dicta, the court referred to the fact that the petitioner did not acquire any legally protected custodial rights as a consequence of having been named a "respondent-person legally responsible” in a neglect petition which was subsequently withdrawn when the mother signed a voluntary placement agreement on behalf of the child. (Supra, at 136.) Since the analysis of the legal rights at issue in Roland F. was based entirely upon article 6 of the Family Court Act and article 5 of the Domestic Relations Law, this decision has no bearing on the issue presently before this court.