Matter of AL.C. (2024 NY Slip Op 03799)

Matter of AL.C.

2024 NY Slip Op 03799

Decided on July 11, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: July 11, 2024

Before: Webber, J.P., Gesmer, Kennedy, Rosado, O'Neill Levy, JJ. 

Docket No. B-01507-10/18 Appeal No. 2559 Case No. 2023-06264 2023-06268 2023-06269 2023-06270 

[*1]In the Matter of AL.C., and Others, Dependent Children Under Eighteen Years of Age, etc., Administration for Children's Services of the City of New York, Petitioner-Appellant. 

Sylvia O. Hinds-Radix, Corporation Counsel, New York (Eva L. Jerome of counsel), for appellant.
Dawne A. Mitchell, The Legal Aid Society, New York (Judith Stern of counsel), attorney for the children.

Order, Family Court, Bronx County (Lauren T. Broderick, J.), entered on or about December 6, 2023, which, to the extent appealed from, denied the application of petitioner Administration for Children's Services (ACS) to discontinue supervised visits between the former foster mother and the subject children, modified, on the law and the facts, to specify that such visits shall be supervised by ACS, the foster care agency, or an approved resource and that the former foster mother's partner, Manuel R., shall not be present at visits, and otherwise affirmed, without costs.
As an initial matter, we reject the argument raised by the attorney for the children that the appeal should be dismissed because the permanency hearing order on appeal is a nonfinal order. Under the Family Court Act, this Court has jurisdiction to hear this appeal because "[a]n appeal from an intermediate or final order in a case involving abuse or neglect may be taken as of right" (see Family Court Act § 1112[a]; see also Matter of Cristy C. [Roberto C.], 77 AD3d 563, 563 [1st Dept 2010], lv denied 16 NY3d 712 [2011]).
The order, dated November 30, 2023, and signed on December 6, 2023, was issued after a four-day permanency hearing, which commenced on August 4, 2023. It concerns four siblings who have been in foster care since 2016. It sets out the permanency goals, placement arrangements and visitation plans for the children "until the completion of the next permanency hearing or pending further orders of this Court."[FN1] In analyzing the order, we defer as we must to the factual determinations of the Family Court judge, who had the opportunity to observe and listen to the witnesses (Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; Matter of Kimberly J. v Benjamin G., 227 AD3d 471 [1st Dept 2024]). Upon doing so, we find that the order is supported by a sound and substantial basis in the record (see Matter of Victoria B., 164 AD3d 578, 580, 581 [2d Dept 2018]). Specifically, under the particular circumstances of this case, we find that Family Court's continuation of the children's visitation with the former foster mother was an appropriate exercise of its obligation to direct a disposition which advanced the goal of finalizing the children's placement for adoption and was in accordance with the children's best interests (Family Court Act § 1089[d]).
Therefore, we affirm the order but modify to specify that the children's visits with the former foster mother shall be supervised, and that her partner, Manuel R., may not be present at visits. This modification is consistent with prior orders directing that the visits be supervised by ACS, the agency, or an approved resource and with the parties' apparent understanding that supervision would continue. No one disputed that the former foster mother's partner was not to be present at the visits.
Family Court Act § 1089, which governs permanency hearings, is part of article 10-A of the Family Court Act. The purpose of article 10-A is "to [*2]provide children placed out of their homes timely and effective judicial review that promotes permanency, safety and well-being in their lives" (Family Court Act § 1086). As this Court has previously held, "the law makes clear . . . that the agencies' efforts towards a permanency plan must be tailored to the particular circumstances and individuals in a given case" (Matter of Lacee L. [Stephanie L.], 153 AD3d 1151, 1152 [1st Dept 2017] [internal quotation marks omitted], affd 32 NY3d 219 [2018]).
At a permanency hearing, Family Court considers the permanency hearing report which, as relevant to this appeal, includes "the visitation plan," which sets forth "the persons with whom the child visits" and "the frequency, duration and quality of the visits" (Family Court Act § 1089[c][2][iv]). Family Court is required to consider the children's wishes, and children age 10 and above are entitled to participate in the permanency hearing (Family Court Act §§ 1089[b][1-a], [d]). Here, the children expressed, through their attorney, a strong desire to continue to visit with the former foster mother. As is required by statute, following the hearing, the court issued a permanency hearing order which directed a disposition in accordance with the children's best interests and safety (Family Court Act § 1089[d]). Since foster care placement was extended, the permanency hearing order included, as required, "a description of the visitation plan or plans" (Family Court Act § 1089[d][2][vii][A]), which continued visits with the former foster mother.
It is undisputed that the children were suffering from PTSD and other mental health and educational difficulties when they were placed with the former foster mother. During the nearly six years she cared for them, they improved markedly and became strongly bonded with her. It is also undisputed that removal from the former foster mother's home in or about December 2021 and placement in a series of different foster homes was traumatic for the children. Recognizing this, ACS concedes that, following removal from the former foster mother's home, "ACS and the foster care agency . . . consented to and facilitated" visitation between the former foster mother and the children because it had a "positive and stabilizing influence on the children" and was thus an appropriate aspect of the required "reasonable efforts . . . to effectuate the child's permanency plan" (Family Court Act § 1089[d][2][iii]). Contrary to the dissent's statement, Family Court did not "award" visitation to the former foster mother. Rather, the court ordered visitation in response to the children's request for it, and in order to advance the permanency plan and the children's well-being. This visitation was set forth in prior permanency hearing orders and continued on consent through the immediately previous permanency hearing order dated March 8, 2023.
At the permanency hearing that resulted in the order, the parties agreed that the goal for these children [*3]remained adoption and the court approved that goal, which had been established in a prior permanency hearing order. At the time of the hearing, the children were not yet in an identified pre-adoptive placement, but the agency had identified potential adoption resources which included the current foster family and the former foster mother's brother.[FN2] Family Court determined that it was in the children's best interests to continue weekly supervised visits with the former foster mother and that doing so advanced the goal of adoption. That determination was based largely on its credibility determinations, to which we give great deference (see e.g. Eschbach, 56 NY2d at 173; Kimberly J., 227 AD3d at 471; Matter of Andrew R., 146 AD3d 709, 710 [1st Dept 2017]).
ACS argues that the evidence establishes that the former foster mother was "undermining" the children's "pre-adoptive placement." However, the children's current foster mother testified that she did "not mind having a relationship with" the former foster mother. In addition, ACS did not adduce any expert testimony to support its position that the visits were preventing the children from adjusting to the current foster home or to demonstrate that severing their undisputedly close relationship with the former foster mother would not be harmful to the children. Moreover, as Family Court noted in its order, the children had been freed for adoption, "but not yet placed in a pre-adoptive home." Additionally, at the time of the hearing, the biological father of two of the foster children had filed a petition challenging his conditional surrender of his parental rights on the basis that the condition—adoption by the former foster mother—had failed.
In support of its argument that continued visitation with the former foster mother was "no longer" a "positive and stabilizing influence on the children," and that continued visitation with her was now not in their best interest, ACS noted that the former foster mother lacked standing to seek visitation, and was not entitled to the same "solicitude" as a parent in determining a visitation plan in the order. We agree with ACS and the thoughtfuldissent that the former foster mother does not have standing to seek visitation. However, the former foster mother did not seek visitation.[FN3]Family Court continued the pre-existing order of supervised visitation with the former foster mother because the court determined that, contrary to ACS's arguments, and based on the evidence presented at the hearing, doing so was in the children's best interests and would advance the goal of finalizing the children's placement for adoption (Family Court Act § 1089[d]).
The dissent argues that Family Court may only direct visitation with certain persons in a permanency hearing order, citing to and relying on Domestic Relations Law §§ 70, 71, and 72 and Family Court Act §§ 1030 and 1081. Those statutes are not applicable here.Domestic Relations Law § 70 sets forth the procedure for [*4]a parent to seek the return of a child wrongfully detained by another parent. Domestic Relations Law §§ 71 and 72 define standing for siblings and grandparents to seek visitation or custody. Family Court Act § 1030 concerns the standing of respondents to seek visitation during child protective proceedings. Family Court Act § 1081 concerns the rights of noncustodial parents and grandparents previously awarded visitation rights to enforce those rights during child protective proceedings and establishes standing to seek sibling visitation for children in foster care. In contrast, Family Court Act § 1089, which governs permanency hearings for children in foster care, places no limitation on who may be included in a visitation plan as part of a permanency hearing order (Family Court Act §§ 1089[c][2][iv], 1089[d][2][vii][A]).[FN4]
As discussed above, we agree with our colleague that the former foster mother in this case, like the non-parents in the cases cited in the dissenting opinion, lacks standing to petition for visitation (Matter of Katrina E., 223 AD2d 363 [1st Dept 1996], lv denied 88 NY2d 809 [1996] [aunt and uncle lacked standing to seek visitation of children in foster care]; Matter of Brian H., 25 AD3d 739 [2d Dept 2006] [in child protective proceeding, boyfriend of child's mother lacked standing to seek visitation and visitation would be contrary to the child's best interests]; Matter of Jessica F., 7 AD3d 708 [2d Dept 2004] [great-grandmother lacked standing to petition for visitation of children in foster care]; Matter of Joseph, 286 AD2d 995 [4th Dept 2001] [former foster parents who petitioned for visitation lacked standing]; Matter of Bessette v Saratoga County Comm'r of Social Servs., 209 AD2d 838 [3d Dept 1994] [former foster parents lacked standing to petition for visitation after children had been returned to biological parent, who did not consent to visitation]). Accordingly, and because Family Court's order was appropriately tailored to the facts of this case and based on the court's determination of what was in the children's best interests, we strongly disagree with the dissent's argument that our holding could somehow create standing for legal strangers to seek visitation in foster care cases. We do not so hold.
Commonly, visitation plans for children in foster care involve parents, grandparents or siblings, all of whom have standing to commence visitation proceedings. However, in this case, there was no visitation petition orproceeding before the court at the time of the permanency hearing. Rather,the court ordered visitation between the children and the former foster mother in order to advancethe children's "well-being" as it is required to do under Family Court Act § 1086. To accomplish that, the court gave special attention to the unique, undisputed circumstances of these children: (1) the children suffered from PTSD and other mental health issues following removal from their biological mother in 2016; (2) they each improved [*5]remarkably during the nearly six years they were cared for by the former foster mother; (3) removal from her care in December 2021 was traumatic for them; (4) at the time of the order, the children had only been in their current foster home for a few months; (5) ACS and the foster care agency had previously consented to and facilitated visits with the former foster mother for approximately two years; and (6) the children remained strongly bonded to her as the only adult who had been a consistent positive presence in their lives at the time of the 2023 permanency hearing that resulted in the order.
It is undisputed that, as Family Court explained on the record, "there is no legal path where the children end up in [the] care" of the former foster mother. However, the court expressedconcern that discontinuing all contact with her at this time would be contrary to their well-being. The court noted that it was troubled "that we didn't have more details [presented at the hearing] about the children's therapy and medication" and that there was no testimony that "cutting off all contact with [the former foster mother] . . . is therapeutically beneficial." Under these circumstances, Family Court's continuation of visitation with the former foster mother was an appropriate exercise of its authority under Family Court Act § 1089, was tailored to the particular circumstances of these children, and was in keeping with the legislative goal of ensuring foster children's well-being.
Our dissenting colleague also cites Matter of Emanuel S. v Joseph E. (78 NY2d 178 [1991]), which involved a petition for grandparent visitation over the parents' objection and is thus not applicable here. To the extent that our colleague cites it in support of her argument that our holding is inconsistent with our obligation to respectparents' constitutional rights, that issue is not relevant in this case since the parents' rights had been terminated at the time of the order.[FN5] Rather, this case involves Family Court's exercise of its parens patriae obligation to make orders in the best interests of the children and in furtherance of their permanency plan. We find that it exercised that obligation appropriately here.
Finally, we note that our dissenting colleague's argument that Family Court lacked authority to continue visitation with the former foster mother was not raised or addressed by either party. While ACS sought, at the hearing and on appeal, termination of the children's visits with the former foster mother based on its claim that continued visitation does not serve the permanency goal of adoption and is no longer in the children's best interests, it does not argue that Family Court did not have authority to continue visits with the former foster mother at all. Indeed, ACS concedes that it consented to inclusion of those visits in prior permanency hearing orders. Moreover, on appeal, ACS argues in the alternative that Family Court should have granted ACS "discretion to [*6]begin the process of gradually bringing visits with the former foster mother to an end with therapeutic input," further indicating its understanding that Family Court could properly have included continued visitation with the former foster mother as an element of the permanency plan, as it had done previously, upon a finding that doing so is in their best interests.
To the extent that the April 2024 permanency hearing order did not address visitation, based on its understanding of this court's order granting a stay, we direct that the next permanency hearing order do so.
All concur except Rosado, J. who concurs in part and dissents in part in a memorandum as follows:

ROSADO, J. (concurring in part, and dissenting in part)
 

I respectfully concur in part, and dissent in part.
This Court is ultimately presented with two questions in the instant case: (i) whether this Court has jurisdiction to hear an appeal from an intermediate order in a case involving abuse or neglect; and (ii) whether this Court has the power to order visitation between the subject children and a person who has no legal, or blood relation to them, alternatively referred to as a "legal stranger."
As to the first question, whether this Court has jurisdiction to entertain an appeal from an intermediate order in a case involving abuse or neglect, I concur with my esteemed colleagues in the majority that this court does have jurisdiction to hear the appeal. It is well-established law in this jurisdiction that "[a]n appeal from an intermediate or final order in a case involving abuse or neglect may be taken as of right" (see Family Ct Act § 1112[a]; see also Matter of Christy C. [Roberto C.], 77 AD3d 563 [1st Dept 2010], lv denied 16 NY3d 712 [2011]). As this issue is explored more fully by the majority, no further inquiry or analysis is necessary as to this question.
As to the second question, whether this Court has the power to order visitation between the subject children and a legal stranger, the answer is unequivocally no. The dangerous precedent being proffered by the majority in today's decision is neither supported by black-letter law, or by the decades of decisions rendered in this state on the matter. I, therefore, vehemently dissent.
It is my belief, that this Court is not endowed with the power to award visitation between the subject children and their former foster mother, as she is a legal stranger to the children and has no affirmative rights under the law to have court-ordered visitation with them. Thus, the Family Court order should be modified, and the provision ordering visitation between the children and their former foster mother should be stricken.
Background
In the instant appeal, the Administration for Children's Services (the agency) appeals from a permanency hearing order of the Family Court, which denied its application to discontinue supervised visits between the former foster mother Regina F., and the subject children. The agency [*7]argues, inter alia, that Regina F. lacks standing to receive visitation with the subject children under the jurisdiction of the Family Court. [FN6] Prior to the children's removal from Regina F.'s care due to a finding of neglect against her (in connection with her biological children), the subject children had lived with her continuously for nearly six years. The record is replete with references to the warm and loving bond shared by and between Regina F., and the subject children. Indeed, it is undisputed by all parties that the children deeply love Regina F., and that she has been the only consistent caregiver they have known in their lives. The agency removed the subject children from Regina F.'s care on December 29, 2021, after which they were placed in three subsequent foster homes. Upon removing the subject children from her home, the agency informed Regina F., that she would never be allowed to adopt the subject children. Following the children's removal from Regina F.'s care the Family Court determined it would be in the best interests of the children to maintain a relationship with Regina F. and ordered regular supervised visitation to take place between Regina F., and the children. In February 2023, the Family Court continued the visitation order between Regina F., and the children. During the permanency hearings conducted on August 4, September 3, 14, and November 30, 2023, the agency argued to discontinue supervised visitation between Regina F., and the subject children. By orders dated November 30, 2023, and December 6, 2023, the court continued the weekly supervised visits with Regina F. It is the latter order that the agency appeals from.
It is undisputed by all parties that Regina F., is a legal stranger to these children, as she shares no blood relation to the subject children, nor is she their foster mother, or adoptive mother (indeed the record is clear that she is precluded from ever adopting the subject children).
Argument & Analysis
Standing and Restrictions on the Court's Power to Award Visitation
The esteemed members of the majority opine that Regina F. lacks the standing to seek visitation with the subject children. In that belief, the majority and I are united.[FN7] The majority however, takes the position that the agency's argument that Regina F. lacks standing to seek visitation with the children is inapposite because: (i) Regina F. did not seek the visitation, rather the Family Court continued a pre-existing order which awarded her supervised visitation; (ii) such visitation order was an appropriate exercise of the Family Court's obligation to a direct disposition which advanced the goal of finalizing the subject children's placement for adoption in accordance with Family Court Act § 1089[d]; and (iii) the Family Court determined that the visitation was in the children's best interests. The Majority points to the Family Court Act §§ 1089 [c][2][iv] and [d] to support its affirmation of the Family Court order.
I respectfully disagree with that position. I would contend that this holding fails to contemplate two important and well-established considerations. First, in Matter of Emanuel S. v Joseph E., 78 NY2d 178, 183 [1991], the court held that that the issue of standing must be resolved before the issue of the best interests of the child can be considered. Secondly, it is well-established doctrine in this state that the court is bound by an extremely circumscribed list of individuals to whom they may order visitation, a doctrine which is neither affirmatively rebutted nor contradicted by the statutes or case law proffered by the majority.
Standing
It is settled law that standing is a threshold issue that must be addressed and satisfied before a court may even contemplate whether [such visitation] would be in the child's best interests (see Matter of Joseph, 286 AD2d 995, 996 [4th Dept 2001] ["[s]tanding issue must be resolved. . . before the issue of the best interest of the child can be considered."]; see also Matter of Katrina E., 223 AD2d 363 [1st Dept 1996]; Matter of Brian H., 25 AD3d 739, 740 [2d Dept 2006]; Matter of Jessica F., 7 AD3d 708, 710 [2d Dept 2004]; Matter of Bessette v Saratoga County Commr. of Social Servs., 209 AD2d 838, 839 [3d Dept 1994]). Here, the majority affirms the Family Court's circumvention of this mandated threshold issue, without explanation beyond that the Family Court deemed that the visitation would be in the children's best interests; and that it is within the Family Court's power to issue such visitation orders and plans pursuant to Family Court Act §§ 1089[c][2][iv], [d]. The majority decision is silent as to any reference to statutes or judicial holdings which demonstrate that the power given to the Court to order visitation under the above-named provisions of the Family Court Act are impervious to, or somehow can be read to override the Court's requirement to conduct a standing determination before proceeding to a best interests determination. In furtherance of their argument, my esteemed colleagues in the majority explore the general purpose of article 10-A of the Family Court Act which governs permanency hearings, arguing that this Court has previously held that "the law makes clear. . . that the agencies' efforts towards a permanency plan must be tailored to the particular circumstances and individuals in a given case" (Matter of Lacee L. [Stephanie L.], 153 AD3d 1151, 1152 [1st Dept 2017] [internal quotation marks omitted], affd 32 NY3d 219 [2018]); however, in my opinion respectfully, neither the facts of the case nor its holding are applicable here; and most certainly I see no way that this holding can be read as providing the Court carte blanche authority to circumvent a required standing analysis. Indeed, the holding cited to support the majority's contention fails to specifically touch upon the issue of standing (and whether it can be bypassed or overlooked), nor does it suggest generally that [*8]the Court has plenary power to overlook threshold analysis requirements in the furtherance of the best interests of the child and/or in order to "effectuate the child's permanency plan" (Family Court Act § 1089[d][2][iii]). Nor, in my estimation does the plain language of the statute cited by the majority elucidate that orders issued in accordance with Family Court Act § 1089 are somehow insulated from, or not beholden to the well-established standing analysis requirement. Family Court Act § 1089 simply cannot be read or interpreted in a way which would authorize the Court to override or skip the standing analysis prong and focus solely on the best interests determination. It is my belief that it is beyond the purview of this Court to amend or disregard, (or to permit through affirmance, the lower court to amend or disregard) a well-established prong of the law absent a thoroughly reasoned explanation supported by the jurisprudence of this jurisdiction, or amendment or modification to the law passed by the Legislature.
Whether or not Regina F., has "sought," or was "awarded" visitation at the behest of another party, in my opinion is an exercise of semantics that does not, and cannot ameliorate the necessity of this Court to conduct a standing analysis, nor does it permit the Court to circumvent a standing analysis. Nor would the fact that the request or petition for visitation with Regina F., came from the subject children, or the agency, or both. No matter the party that requested (or acquiesced) to the visitation, nothing in any statute cited, or case law of this state justifies the obviation of this Court's obligation to employ a standing analysis before it entertains a best interests analysis. Indeed, no case law has been proffered rebutting the standard set forth in Matter of Joseph or the subsequent cases which reaffirm that standard. In my estimation, this decision, which holds that the Court may skip a standing analysis if it is in furtherance of effectuating a child's permanency plan, exceeds the role of judicial power by impermissibly assuming the role of the Legislature, and erroneously gives the Court unbridled parens patriae power over the families of this jurisdiction.
The majority also seems to contend that because the order being appealed is merely a continuation of a prior existing order the question of standing is inapposite. I do not agree. Any orders that contain an impairment, mistake, or defect affecting a substantial right of a party should necessarily be cured (see CPLR § 5019[a]; see also Kiker v Nassau County 85 NY2d 879 [1995]).
In its decision, the majority thoughtfully argues: (i) that visitation between the children and Regina F. is in the subject children's best interests, (ii) notes that the subject children wish to continue contact with Regina F., and (iii) correctly notes that the Family Court Act §§ 1089[b][1-a], [d] obliges the Court to consider the wishes of the subject children in making its [*9]determinations regarding visitation. However, as this Court is precluded from awarding Regina F. visitation it must stop its analysis there, and cannot, and should not proceed to the second prong of analysis in Matter of Emanuel S. v Joseph E., to determine whether visitation between Regina F., and the children would be in their best interests.
Restrictions on the Court's Power to Award Visitation
It is well-established doctrine in this state that the court is bound by an extremely circumscribed list of individuals to whom they may order visitation. Family Court Act § 1081 limits visitation rights with a child remanded or placed in the care of social services officials, as in the instant case before the Court, to the child's grandparent, non-custodial parent, and the child's siblings (including half-siblings) [FN8] (see Matter of Jessica F., 7 AD3d 708, 710 [which held "that Family Court Act § 1081(1) only permits a noncustodial parent or grandparent to seek visitation"]; (see also Matter of Brian H., 25 AD3d at 740; Bessette v Saratoga County Comm'r of Social Servs., 209 AD2d at 839). There is no statutory provision in this state which expressly provides former foster parents the right to be awarded visitation (see Matter of Joseph, 286 AD2d at 995 [which held, "there is no statute that expressly gives former foster parents the right to maintain a proceeding for visitation"] [internal quotation marks omitted]). There is only one known statutory authority which gives broader discretion to the Court in determining to whom they may award visitation (see Family Ct Act§ 1030), however it restricts the Court to award visitation only to those individuals who are currently respondents in child protective cases, who have been deemed to have been acting in loco parentis of the children; and the ability to award visitation to those individuals ends with the close of the child protective proceeding (see Matter of Commissioner of Social Serv. on Behalf of RS Children, 168 Misc 2d 11 [1995]). As none of those conditions have been met in the instant case with Regina F., it cannot be relied upon as authority for this Court to order visitation with the subject children.
The majority argues that because the Family Court acted in compliance with the black letter language set forth specifically in Family Court Act § 1089[c][2][iv], [d], by ensuring that it issued orders generally, which it deems to advance the goal of finalizing the children's placement for adoption, and that the permanency report included a "description of the visitation plan," which sets forth "the persons with whom the child visits" and "the frequency, duration and quality of the visits," and then issued a permanency hearing order directing supervised visitation between Regina F., and the children, that the visitation ordered is valid or permissible. In other words, it is argued that because the Court has the power to order visitation under Family Court Act § 1089[c][2][iv], and [d], the [*10]Court has carte blanche power to order visitation with whomever they deem appropriate if it is in the best interest of the children, as long as it deems those orders to be advancing the goal of finalizing the children's placement adoption. I respectfully disagree. The majority's interpretation of those two clauses, in isolation from the remainder of the statute, does not comport with the meaning or intent of the rest of the statute from which it has been quoted, nor does it comport with the historic holdings of this jurisdiction. These provisions cannot be read in insolation from the rest of the statute. (See Matt of Purcell v New York State Tax Appeals Tribunal, 167 AD3d 1101 [3d Dept 2018] [holding "when engaging in statutory interpretation "all provisions of the statute must be read and construed together."]; see also King v Burwell,576 US 473, 485 [2015]).
Let us look at Family Court Act § 1089; while it does not list out the types of individuals who may not have visitation with the children, it does affirmatively provide a list of individuals visitation with whom the court may order. Family Court Act § 1089 [d][2][viii][F], permits the court to encourage and order visitation between the subject children, and their parents, siblings, and grandparents. Family Ct Act § 1089 [d][2][viii][F], additionally references both the Family Court Act § 1081, and section 71 of the Domestic Relations Law, which clearly enumerate the specific individuals that the Court may order visitation to. It is my contention that this qualifying language is imperative in analyzing the statutory meaning and intent of § 1089, particularly Family Court Act § 1089[c][2][iv] and [d]. These citations further emphasize the idea that the Court may only award visitation to a group of individuals specifically enumerated in the statutes. Indeed, the language in all of the above referenced statutes demonstrates the legislative intent that there is a circumscribed list of individuals to whom this Court may order visitation. It is not, I believe, and as the majority contends, language that is meant to apply specifically to children whose parents' rights have been terminated, but rather serves to reaffirm the broad statutory scheme in which a circumscribed group of individuals is permitted to have court ordered visitation. To wit, there exists no statute, or indeed caselaw known to this Court which demonstrates or establishes that the language of Family Court Act § 1089[c][2][iv], [d] empowers the Court to order visitation between the children and persons not specifically contemplated by Family Court Act § 1081, 1030, Domestic Relations Law §§ 70, 71, and 72; nor does it suggest that it provides courts with the ability to override the specifications of those above referenced statutes.
The majority contends that "commonly visitation plans for children in foster care involve parents, grandparents, or siblings." To be sure, the jurisprudence in this jurisdiction is replete with [*11]cases which uphold and affirm this contention. However, I know of no case affirmed in the higher courts of this jurisdiction, nor have my esteemed colleagues provided any cases, in which visitation between children (whether in foster care or without) with a legal stranger has been affirmed. Thus, in my opinion, today's decision constitutes an erroneous, and extreme departure from the case law of this State.
While this Court cannot affirmatively award Regina F. visitation with the subject children, I find nothing in the record prohibiting Regina F. and the children's current foster mother from arranging for contact between Regina F., and the subject children on their own. As noted, the record is replete with credible testimony that the children and Regina F. share a warm and loving bond with each other, and it is clear the children wish to continue to have a relationship with her.
Public Policy Consideration
I am of the opinion that the majority's holding poses a significant adverse risk to public policy. Firstly, it effectively creates a "back door" for any legal strangers to circumvent the well-established standing requirements necessary for being awarded visitation. This would result in turmoil for countless families who will have to defend themselves (often at great emotional, and financial cost) against an innumerable pool of persons who are trying, over objection, to gain access to children. Not only would this destabilize the lives of families throughout this jurisdiction, but it would undoubtedly inundate the already overburdened courts with a deluge of cases.
The majority contends that because the Family Court's order was tailored to the facts of the instant case it does not create standing for legal strangers to "seek" visitation in foster care cases. I agree, in part, with that statement. This precedent would not merely give standing for legal strangers to "seek" visitation in foster care cases; rather based on the holding today all that would be required to have visitation awarded to a legal stranger is if any of the parties ask the court for such, a premise which is concerning indeed. If it is the majority's contention that its holding will not create a precedent in this jurisdiction as it is applicable only to the instant case before us, I see no language to that effect, and still, on principle, am compelled to dissent.
Secondly, this decision imperils the long-protected right enshrined in the Constitution of the United States of a parent to decide how to parent their child, whilst endowing the Court with an unqualified and overbroad plenary role of parens patriae to intervene in the daily lives of families in this jurisdiction (see Matter of Marie B., 62 NY2d 352, 358 [1984] [which holds "fundamental constitutional principles of due process and protected privacy prohibit governmental interference with the liberty of a parent to supervise and rear a child. . ."]; see also Stanley v Illinois, 405 US 645 [1971]; Pierce [*12]v Society of Sisters, 268 US 510 [1925]).
Even in those cases where termination of parental rights has been effectuated, and therefore no constitutional rights of parents are necessarily implicated, the very notion that an individual, who is a legal stranger to the children would be able, as of today's decision, to circumvent a cornerstone of due process in order to gain access to our jurisdiction's most vulnerable population is a distressing thought indeed.
Conclusion
For all of the reasons described herein, I concur in part, and dissent in part.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: July 11, 2024

Footnotes

Footnote 1: In the order, the court scheduled the next permanency hearing to take place on April 10, 2024. Based on statements made by counsel at argument, it appears that the order has not been rendered moot by a subsequent permanency hearing order (see Matter of Victoria B., 164 AD3d 578, 580 [2d Dept 2018]).

Footnote 2: To the extent that ACS argues that this Court should consider the fact that the former foster mother's brother's application for an interstate adoption was ultimately denied, we may not do so, since that occurred after issuance of the order appealed from. Family Court may consider that fact at the next permanency hearing.

Footnote 3: Accordingly, the only standing relevant in this case is that of ACS and the foster children.

Footnote 4: Similarly, Family Court Act § 1089(d)(2)(viii)(F), cited by the dissent, is not applicable here since that provision applies where parental rights have not been terminated and there is a finding that "diligent efforts to encourage and strengthen the parental relationship" are not detrimental to the child. Here, the children's parents' rights had been terminated at the time of the order.

Footnote 5: Moreover, even if the children's parents were in a position to assert their constitutional rights - and we do not find that they were — the biological father of two of the children had made adoption by the former foster mother a condition of his surrender of his parental rights.

Footnote 6: The majority opines that the parties to this action failed to argue that the Family Court did not have the authority to continue visits with Regina F., however, the agency's motion papers clearly address and argue: "that the Family Court's Order granting weekly visitation over the agency's objection was an abuse of discretion of the Family Court and not supported by any statutory provision or case law." 

Footnote 7: The majority contends that the only standing relevant in this case is that of the agency and the subject children. "Standing" as defined by Black's Law Dictionary, states that "standing to sue means that party has a sufficient stake in an otherwise justiciable controversy. . . plaintiff must have a legally protectable and tangible interest at stake in the litigation." As discussed further in this dissent, because courts may not award legal strangers visitation, it cannot be argued that either the agency, or the subject children have standing in this matter to request the Court to order visitation with Regina F. However, as neither the agency nor the attorney for the children raised the issue of whether they had standing in this matter no further inquiry into that matter is required.

Footnote 8: Sections §§ 70, 71, and 72 of the Domestic Relations Law likewise provide that the court may only issue orders of visitation to the following individuals: the parent of the subject child, a sibling of the subject child and/or a grandparent of the subject child.